Daniel L. Steele (6336)
Grant M. Sumsion (6445)
Bron Rammell (ID State Bar No. 4389)
Attorneys for Plaintiffs
SUMSION STEELE & CRANDALL
545 E, University Parkway, Suite 200
Orem, UT 84097
Telephone: (801) 426-6888
Email: dan@sumsionsteele.com
        grant@sumsionsteele.com
        bron@mrtlaw.net

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| NEHEMIAH MCFARLIN and ATOATASI FOX,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>BOX ELDER COUNTY; BOX ELDER COUNTY SHERIFF'S OFFICE; ADAM WALKER, individually; JUSTIN ZILLES, individually; STEVEN BERRY, individually; Z. MOORE, individually; SHANE NEBEKER, individually; L. MAUGHAN, individually; ONEIDA COUNTY; ONEIDA COUNTY SHERIFF'S OFFICE; SHERIFF JEFF SEMRAD, individually; DETECTIVE PATSY SHERMAN, individually; and JOHN and JANE DOES I-X, individually,<br><br>　　　　　Defendants. | Case No. 1:18-cv-00156-DAK-CMR<br><br><br>**PLAINTIFFS' RESPONSE TO BOX ELDER COUNTY DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br><br><br>Magistrate Judge Cecilia M. Romero |

Plaintiffs Nehemiah Mcfarlin and Atoatasi Fox, respond to Box Elder

County Defendants' Motion for Judgment on the Pleadings as follows:

/ / /

/ / /

## MEMORANDUM

## I.   INTRODUCTION

A party may move for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) once the pleadings are closed, but early enough not to delay a trial. F.R.C.P. 12(c). In civil rights cases, "Several courts view Rule 12(C) motions as disfavored…, and hold that such motions should be applied with 'particular strictness' and in a manner that tests pleadings under a 'very lenient, even de minimis' standard." STEVEN BAICKER-MCKEE ET AL., FEDERAL CIVIL RULE☐ HANDBOOK 478 (Thomson Reuters 2019) citing *McGlone V. Bell* 681 F. 3d 718,728 (6th Cir. 2012) and *Cleveland v. Caplaw Enters*., 448 F. 3d 518,521 (2nd Cir. 2006). 10th Circuit cases have applied as similar standard. *See e.g. Redmond v. Alexander*, CIVIL ACTION No. 88- 2516-L, 1992 U.S. Dist. LEXIS 14098, at *9–*10 (D. Kan. Aug. 5, 1992) ("It is well recognized that motions to dismiss under Rule 12(c) are generally disfavored and rarely granted.); *see also Lowe v. Angelo's Italian foods*, CIVIL ACTION No. 93-1233-FGT, 1993 U.S. Dist. LEXIS 18931, at *1 (D. Kan. Oct 7, 1993).

In the present case, though the defendants have answered Plaintiffs' complaint, and may argue the pleadings are technically "closed", this case is

in its early stages.  Accompanying this response is a Motion to Amend, with a Proposed Amended Complaint, incorporating information recently received through Supplemental Initial Disclosures and preliminary discovery.  Plaintiffs initially had to rely on describing what occurred and the limited identification of individuals based on memory and attempted pre-suit discovery.  Their Complaint identifies "John Does" reflecting notice of their need for further information. No depositions have been held or scheduled[1]. Plaintiffs filed their complaint more than two years before the statute of limitations runs, and have diligently prosecuted their case.

Furthermore, Defendants Initial Disclosures contained no substantive information. Supplemental Initial Disclosures, received on March 15, 2019 finally revealed some of the information Plaintiff has needed in order to identify the individuals who violated Plaintiff's civil rights and to describe in greater detail what each defendant did.  Responses to Plaintiff's discovery was not provided until _after_ Defendants filed their Motion to Dismiss on the Pleadings. The defendants are in possession of all of the information needed by Plaintiffs to address the specifics that defendants insist is required.

---

[1]Additionally, 3 defendants have not been served.  Plaintiff incorrectly believed all defendants had been served. A motion has been contemporaneously filed requesting an extension of time to serve the additional defendants.

Rule 12(c) motions are considered under the same standard as a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6). *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000). Accordingly, a motion made pursuant to Rule 12(c) should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief." *Gff Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 2012).

Furthermore, "[d]ismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 736–37 (9th Cir. 2009) internal quotations omitted, quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001); *See also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) **and granting leave to amend would be futile**" (emphasis added)); *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189 (10th Cir. 2012); *United States Surgical Corp. v. Orris, Inc.*, 5 F. Supp. 2d 1201, 1213 (D. Kan. 1998).

A court "should freely give leave to amend when justice so requires." F.R.C.P. 15(a)(2). Therefore, a dismissal without leave to amend is only

appropriate where the complaint fails to state a claim, and allowing the Plaintiff to amend the complaint would be futile in correcting the deficiencies. *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189 (10th Cir. 2012).   Particularly, where granting a 12(c) motion will terminate a case with prejudice, it is "inappropriate" to dismiss a case without leave to amend. *Harris v. County of Orange*, 682 F. 3d 1126, 1131 (9th cir. 2012); *See also Brereton*, 434 F.3d at 1219 (10th Cir. 2006). The seemingly clear message of FRCP 12(c) is that tactical/procedural positions should give way to substance based litigation when justice would otherwise be subverted. *FRCP* 1.

Furthermore, a complaint need not pin plaintiff's claim for relief to a precise legal theory. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).   And, Plaintiff is not required to give an "exposition" of his legal argument. *Id*. A claim should only be dismissed under Rule 12(b)(6) if it asserts a legal theory that is not cognizable as a matter of law or "if the factual tale is implausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).   A complaint does not require "detailed factual allegations." *Twombly*, 550 U.S. at 555. Rather, it is only necessary that a plaintiff allege the factual grounds to support his claim for relief. *See Id.* The court must

accept all factual allegations as true, and consider each in a light most favorable to the plaintiff. *Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1285–86 (10th Cir. 2011). The court is not to weigh evidence, but to infer that all of the plaintiffs well plead facts are true and accurate in determining if they are sufficient to show grounds upon which relief can be granted. *Smith v. United States*, 561 F.3d 1090, 1097–98 (10th Cir. 2009). All reasonable inferences are to be construed in the non-moving party's favor. *Martin Marietta Materials, Inc. v. Kan. DOT*, 810 F.3d 1161, 1171 (10th Cir. 2016). The objective of these standards is to "ensure that the nonmoving party's procedural and substantive rights are decided as fully and fairly on a Rule 12(c) motion as they would have been if there had been a trial on the merits." *Selman v. Delta Airlines*, No. CIV 07-1059 JB/WDS, 2008 U.S. Dist. LEXIS 108754, at *22 (D.N.M. Aug. 13, 2008) (citing C. Wright & A. Miller, *Federal Practice and Procedure*: Civil 3d § 1368 (Judgment on the Pleadings).

Looking first at Plaintiff's Complaint, and then their proposed Amended complaint, we find that Plaintiffs have provided (or can provide if allowed to amend) information that meets the standard "requir[ing] only a

plausible "short and plain" statement of the plaintiff's claim…." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

## II.   FACTUAL BACKGROUND AS STATED IN THE COMPLAINT AND PROPOSED AMENDED COMPLAINT

On December 14, 2016, Defendants arrested Plaintiffs Nehemiah McFarlin ("Mr. McFarlin") and Atoatasi Fox ("Mr. Fox") (collectively "Plaintiffs") for a bank robbery they obviously did not, and could not, have committed.[2] At the time of their arrest, Plaintiffs' were waiting for AAA to assist them because their car had slid off the road.[3] Unbeknownst to Plaintiffs, the bank in Malad had been robbed a few hours earlier by a single suspect who witnesses described as a black male driving a white four-door Toyota with missing hubcaps.[4]

Oneida County published an "attempt to locate" the individual, based off of that description.[5] Box Elder County Sheriff's office received the ATL and disseminated this information to its deputies.[6] While Plaintiffs were waiting for AAA, a citizen allegedly called Oneida County dispatch to report

---

[2] *See* Complaint pgh. 18–36.
[3] *See* Complaint pgh. 33.
[4] *See* Complaint pgh. 28–31.
[5] *See* Complaint pgh. 31.
[6] *See* Complaint pgh. 32; Amended Complaint pgh. 33.

two black males (Plaintiffs) in a white vehicle off of the Portage Exit.[7] Oneida reported this information to Box Elder County, which sent its deputies to respond[8]

Officer Steve Berry ("Berry") of the Box Elder County Sheriff's Office was the first to arrive.[9] Adam Walker ("Walker") and Justin Zilles ("Zilles") of Utah Highway Patrol also arrived to assist Berry before he had made contact with Plaintiffs.[10]

Upon arrival, Berry, Zilles, and Walker all took notice of the fact that Mr. McFarlin's camaro was not the four-door Toyota described by witnesses and the ATL.[11] They even verified the description of the suspect's vehicle with the other officers and dispatch because of the inconsistency.[12] They noted that the Plaintiffs were "black."[13] Despite the obvious discrepancies, Zilles, Berry, and Walker proceeded to draw their guns upon, arrest, handcuff, and abuse Plaintiffs with no probable cause to do so.[14]

---

[7] *See* Complaint pgh. 33.; Amended Complaint pgh. 34.
[8] *See* Amended Complaint pgh. 34–35.
[9] *See* Amended Complaint pgh. 36.
[10] *See* Amended Complaint pgh. 36.
[11] *See* Amended Complaint pgh. 37.
[12] *See* Amended Complaint pgh. 38.
[13] *See* Amended Complaint pgh. 34, 37.
[14] *See* Amended Complaint pgh. 39–62.

Walker ordered Plaintiffs out of the car one at a time with their hands behind their heads, while Berry and Zilles their weapons at the Plaintiffs.[15] Berry, Walker, and Zilles  handcuffed and berated Plaintiffs while ignoring their scared pleas of innocence.[16] Both Plaintiffs attempted to offer Defendants alibis for their whereabouts during the time of the robbery, and offered evidence that would quickly and unequivocally corroborate that they were not involved in the robbery.[17] They allowed the officers to search their vehicle for any evidence of the robbery and pointed out that the items in their car confirmed the fact that they were not robbers.[18]

Walker, Berry, and Zilles were later joined by Nebeker, Moore, Bowcutt, and Williams who assisted in Plaintiffs' illegal arrest, search of Mr. McFarlin's Camarro, and the Plaintiffs' transport to jail.[19] The other defendants who were present, also did not find any evidence of the robbery on Plaintiffs' persons or in their vehicle.[20] They even acknowledged that Mr. McFarlin's vehicle did not match the description of the suspect's vehicle.[21]

---

[15] *See* Amended Complaint pgh. 40.
[16] *See* Amended Complaint pgh. 39–62.
[17] *See* Complaint pgh. 39; Amended Complaint pgh. 43.
[18] *See* Amended Complaint pgh. 44.
[19] *See* Complaint pgh. 42; Amended Complaint pgh. 48-63.
[20] *See* Amended Complaint pgh. 45–47, 95.
[21] *See* Amended Complaint pgh. 47.

The only thing that matched was that Plaintiffs were the same race as the robbery suspect.[22] There was no probable cause to arrest Plaintiffs. Defendants arrested, held, mistreated, and took the liberty and property of Plaintiffs based on their race.[23]

Once in custody, Plaintiffs were subjected to several hours of needlessly aggressive and coercive interrogation.[24] Eventually, Plaintiffs were released once law enforcement recognized that there was no probable cause justifying their arrest.[25]

## III.   LEGAL ARGUMENT

Defendants argue that: (1) Box Elder Sheriff's Office can not be sued under section 1983; (2) that Plaintiffs have not sufficiently plead facts that would give rise to Box Elder County's liability; and, (3) that Plaintiffs have not sufficiently plead their claims against Defendants Berry, Moore, and Maughan.[26] However, Plaintiffs have sufficiently plead a claim for which relief may be granted, or can amend their complaint to fix any deficiencies, as addressed in the facts above and in the more detailed argument below.

---

[22] *See* Complaint pgh. 43.
[23] *See* Complaint.
[24] *See* Complaint pgh 65; *See* Amended Complaint pgh. 75–103.
[25] *See* Complaint pgh 65.
[26] *See*  Box Elder County Defendants' Motion for Judgment on the Pleadings.

Plaintiff's will respond to each of Defendant's arguments in the order they were made in their motion.

### A.      Box Elder County Sheriff's Office as a Suable Entity

42 USC §1983 provides a private cause of action against any "person" who causes the deprivation of another person's rights. 42 U.S.C. §1983. Box Elder Defendants argue that the Box Elder County Sheriff's Office ("BESO") is not a "person" for purposes of Section 1983, and therefore, cannot be sued pursuant to that statute.[27]

In *Monell v. Dep't of Soc. Servs.*, the Supreme Court held that section 1983 applies to municipalities and other government units. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). While it is true that some circuit courts have found that specific sheriff's departments are not subject to suit under section 1983; *See e.g. Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992), capacity to sue or be sued is determined by the law of the state in which the District Court sits. F.R.C.P. 17(b). While there is no authority supporting a direct action against a subdivision of a Utah county, *White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001), there is also no authority stating

---

[27] *See* Box Elder County Defendants' Motion for Judgment on the Pleadings, pg. 4.

that such a suit is not possible. Defendants refer this court to 3 unpublished opinions in support of their position.[28]

Candidly, Plaintiffs do not care whether BESO remains in the case, if Defendants concede that Box Elder County is the entity liable for BESO's actions. Plaintiff's seek to avoid the possibility that only naming the County would be met with an argument that BESO should have been named. Accordingly, the Court should not dismiss Plaintiffs' claim against BESO, subject to Defendant's concession.

## B.     Plaintiffs' First and Fourth Cause of Action are Adequately Plead Against Box Elder County

The Box Elder Defendants allege that Plaintiffs' First and Fourth causes of action are inadequately plead because they allegedly fail to meet the pleading standards required to establish municipal liability in a section 1983 claim.[29] In *Monnell*, the court held that in order to hold a municipality liable for violations of section 1983, a plaintiff must show that his/her injury was caused by a "policy or custom" of that municipality. *Monell*, 436 U.S. at 691–92. However, the Supreme Court has clarified that this requirement does not mean that federal courts may apply a "heightened" or "more

---

[28] *See* Box Elder County Defendants' Motion for Judgment on the Pleadings, pg. 4.
[29] Box Elder County Defendants' Motion for Judgment on the Pleadings, pg. 4–6.

stringent" pleading standard than what is expressed in Federal Rule of Civil Procedure 8(a), in section 1983 cases alleging municipal liability. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

The Tenth Circuit later interpreted *Monell*, and other subsequent Supreme Court cases, to establish the criteria necessary in order to hold a municipality liable under section 1983. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). A plaintiff must allege that the municipality had an official policy or custom, which caused the plaintiffs' injuries, and that the municipality chose to disregard the risk that its policy or custom may cause harm. *Schneider*, 717 F.3d at 769–71. The U.S. Supreme Court has held that the deprivation of a constitutional right is actionable harm in and of itself, whether Plaintiffs can show actual injury or not. *Carey v. Piphus*, 435 U.S. 247, 266 (1978).

In the present case, Plaintiffs have plead specific policies and/or customs of Box Elder County which caused Plaintiffs' injuries, and that Box Elder deliberately disregarded the known risk that its policies and customs would lead to constitutional violations.[30] Additionally, the Plaintiff's

---

[30] *See* Amended Complaint pgh. 126–229.

Proposed Amended Complaint clarifies the allegations and adds information
showing that the County violated Plaintiff's civil rights through the
following policies and/or customs.[31]

Box Elder County ("BEC") either implemented or failed to implement
a policy that would address the probable constitutional harm that would
occur when outside Agencies instruct BEC employees, or use BEC resources
and facilities, to violate a criminal suspects constitutional rights.[32] Because
BEC borders both Idaho and Nevada, and is near to the state border of
Wyoming, and is bisected by two major interstates; it was reasonable for
BEC policy makers to anticipate situations where the BESO would work in
coordination with other law enforcement agencies.[33] Therefore, BEC's
current policies, or its failure to implement an adequate policy to address
situations in which other agencies violate criminal suspect's constitutional
rights by use of BEC employees, resources, or facilities, shows a deliberate
indifference to the danger that criminal suspects in BEC's constitutional
rights will be violated.

---

[31] *See* Amended Complaint pgh. 126-229.
[32] *See* Amended Complaint pgh. 126–229.
[33] *See* Amended Complaint pgh. 126–229.

Defendant Berry made Sheriff Potter aware of the fact that he and the other defendants had arrested Plaintiffs on behalf of Oneida County despite the fact that there was no probable cause.[34] Sheriff Potter is a final policy maker for BEC, and therefore his complacency with the fact that his officers violated Plaintiffs' constitutional rights constitutes a policy or custom.[35] Accordingly BEC is liable for Plaintiffs' constitutional harm.

### 1. Box Elder County Policies and/or Customs Caused Plaintiffs' Constitutional Injuries

The Supreme Court of the United States has held that municipalities may be liable for its policies, customs, and usages that result in deliberately indifferent training and/or supervision which causes a constitutional injury. *City of Canton v. Harris*, 489 U.S. 378, 387–88 (1989). Similarly, municipalities can be held liable for a deliberately indifferent failure to adopt policies necessary to prevent constitutional violations which give rise to a claim under 1983. *Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003).

  a. <u>Sheriff Potter's Decision to Ratify Defendants'
     Actions Should Be Considered a Box Elder County
     Policy or Custom which Caused Plaintiffs' Injuries</u>

---

[34] *See* Amended Complaint pgh. 126–229.
[35] *See* Amended Complaint pgh. 126–229.

An official policy or custom may be established by a single decision of a municipal policy maker, for the purpose of establishing municipal liability, when that policy maker has final policy making authority. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

In *Pembaur,* the plaintiff (Pembaur) brought a section 1983 claim against his county, alleging that sheriff's deputies had violated his Fourth and Fourteenth Amendment rights by searching his business without a search warrant for third persons believed to be there. *Id.* at 474. When the deputies initially confronted Pembaur, he refused to allow them to enter his business and barred the door. *Id.* at 472. The Deputies then contacted the Sheriff who told them to follow the instructions of the deputy prosecutor. *Id.* at 484. The deputy prosecutor then instructed the deputies to "go in and get" the third party that was believed to be in Pembaur's business. *Id.* at 473. Relying on the instruction from the Sheriff and the deputy prosecutor, the deputies then chopped down Pembaur's door and entered. *Id.*

The Supreme Court held that municipal liability for the violations could be established due to the fact that the deputies had based their actions on instructions from the Sheriff. *Id.* at 484. The court noted that the deputies found themselves in a "difficult" situation and sought instructions from their

superior, the sheriff. *Id.* The instructions they then received was to follow the instructions of the deputy prosecutor's wishes; this instruction caused the violation of Pembaur's constitutional rights. *Id.* In this case, Sheriff Potter's decisions as a final policy maker also established an official BEC policy or custom.

A few minutes after Plaintiffs had been arrested, Steve Berry called Sheriff Potter to tell him that they had arrested Plaintiffs.[36] He explained the circumstances and issues of the arrest to Sheriff Potter, including the fact that no agency had yet obtained a warrant for Plaintiffs arrest or for the seizure of Mr. McFarlin's vehicle.[37] Berry also told Sheriff Potter of his intent to hold Plaintiffs in Box Elder County and allow Oneida County to interrogate Plaintiffs at the county jail.[38] Accordingly, Sheriff Potter was sufficiently aware of the fact of the arrest to know that there was no probable cause.[39] Sheriff Potter instructed his employees to proceed with their plan to hold Plaintiffs in custody.[40] He condoned and ratified their actions, thereby establishing a policy or custom.

---

[36] *See* Amended Complaint pgh. 48-49.
[37] *See* Amended Complaint pgh.48.
[38] *See* Amended Complaint pgh. 49.
[39] *See* Amended Complaint pgh. 53–60.
[40] *See* Amended Complaint pgh. 53–60.

As the Sheriff of Box Elder County, Sheriff Potter was a policy maker with final policy making authority.[41] Like the deputies in *Pembaur*, Steve Berry contacted Sheriff Potter to gain instruction on how to proceed.[42] At any point, Sheriff Potter had the authority to instruct his deputies to release Plaintiffs due to a lack of probable cause.[43]

However, also like the Sheriff in *Pembaur*, Sheriff Potter's instruction to his deputies caused a violation of someone else's constitutional rights. Sheriff Potter approved his deputies actions and either implicitly or explicitly instructed them to continue to assist Oneida County in Plaintiffs' unconstitutional arrest. His acquiescence and approval of his employee's conduct, as well as his failure to reprimand, constitutes a deliberate indifference to the violations of Plaintiffs' constitutional rights. Therefore, Box Elder County is liable for Plaintiffs' Constitutional injuries.

b. Box Elder County's deliberate indifference to adopt the policies or training necessary to prevent constitutional violations caused Plaintiffs' harm

A Plaintiff may establish the existence of a custom or practice capable of creating municipal liability when he pleads that a municipality failed to

---

[41] *See* Amended Complaint pgh. 56.
[42] *See* Amended Complaint pgh. 53–60.
[43] *See* Amended Complaint pgh. 53–60.

take action that would have prevented a constitutional injury. *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 418 (1997) However, it must be obvious that the failure to act will result in a constitutional violation, so that it can be said that the policy maker acted indifferently. *Id.* This indifference may be inferred even without a pattern of prior acts. *Id.* One way this can occur is when a municipality fails to properly train its employees, or otherwise adopt inadequate policies, to address situations where a constitutional violation is likely to occur. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1319–20 (10th Cir. 2002). That is the situation alleged in this case.[44]

In *Olsen v. Layton Hills Mall*, 312 F.3d 1304 (10th Cir. 2002), the court held that the plaintiff had plead sufficient facts to possibly establish municipal liability in a section 1983 claim based on a failure to train. *Olsen*, 312 F.3d at 1319–20. In that case, the plaintiff brought a section 1983 claim against the county after alleging that the county jail's pre booking officers had violated his Eighth Amendment rights. *Olsen*, 312 F.3d at 1311, 19–20. The plaintiff was arrested and taken to the county jail where he explained to the pre-booking officers that he had obsessive compulsive disorder ("OCD"). *Olsen*, 312 F.3d at 1310. The officers took the Plaintiffs

---

[44] *See* Amended Complaint pgh. 59.

medication used to prevent panic attacks brought on by the OCD, and took the plaintiff through the normal pre-booking procedure of taking off his shoes and socks. *Id.* This process caused the plaintiff to suffer a panic attack. *Id.*

In the pleadings, the plaintiff alleged that though policies and training had been put in place to assist pre-booking officers in dealing with certain mental disorders and conditions, there were not adequate policies or training to deal with people suffering from OCD. *Olsen*, 312 F.3d at 1319. The court noted that approximately two percent of the population suffers from OCD. *Id.* Given the frequency of the disorder, and the alleged lack of adequate policies or training to help jail officers to deal with people with OCD, the court held that it was possible that the plaintiff had sufficiently plead circumstances sufficient to show municipal liability for his 1983 claim. *Olsen*, 312 F.3d at 1320.

In this case, Plaintiffs were arrested by Box Elder Defendants based on assertions and requests from an out of state law enforcement agency.[45] Box Elder County Defendants not only arrested Plaintiffs on behalf of Oneida County, but ignored the fact that no probable cause existed for their

---

[45] *See* Amended Complaint pgh. 58.

arrest so that Oneida County could interrogate Plaintiffs.[46] Officer Steve Berry of the Oneida County Sheriff's office participated in Plaintiffs' arrest and insisted that Plaintiffs be booked in the Box Elder County Jail.[47] He told Sgt. Williams that a room would be prepared at Box Elder County Sheriff's office where he could hold and interrogate the Plaintiffs.[48] Sheriff Potter, who as sheriff is a policy maker for Box Elder County, had actual knowledge of the facts surrounding the arrest as well as the fact that Plaintiffs were to be held and interrogated in his county's jail, by and on behalf of Oneida County Defendants.[49]

Like the Defendants in *Olsen*, Box Elder County failed to adopt a policy or procedure, or provide adequate training, necessary to prevent a constitutional violation. It is well known that there is a fundamental conflict between a police officer's duty to enforce the law and the constitutional liberties of those they come into contact with. *See* Rachel A. Harmon, *The Problem of Policing*, 110 Mich. L. Rev. 761, 762–63 (2012) (discussing the common practice of police intruding upon individual liberty in order to pursue civil order). There is no definitive data on the number of police

---

[46] *See* Amended Complaint pgh. 53–60.
[47] *See* Amended Complaint pgh. 60.
[48] *See* Amended Complaint pgh. 60.
[49] *See* Amended Complaint pgh. 53–60.

officer constitutional violations that occur each year, but according to the United States Commission on Civil Rights, "the best available evidence reflects high rates of use of force nationally, and increased likelihood of police use of force against people of color." UNITED STATE☐ COMMI☐☐ION ON CIVIL RIGHT☐, POLICE U☐E O☐ FORCE: AN EXAMINATION O☐ MODERN POLICING PRACTICE☐, BRIE☐ING REPORT 4 (2018). According to one source, in 2010, it was estimated that at least 30,000 police misconduct lawsuits were filed each year against police officers, their employing agencies, and municipalities. Silver, I. (2010). *Police civil liability*. New York, NY: Matthew Bender.

Given Box Elder County's proximity to the border with Idaho and Nevada, and the fact that two interstate highways pass through the county, it is obvious that BESO would have the occasion to work with out of state law enforcement agencies. It is not unreasonable to assume that such cooperation would mean that out of state law enforcement agencies would operate within Box Elder County and use its officers and resources for joint law enforcement endeavors, and that misconduct could occur.

Accordingly, it is reasonable for BEC officials to have known that their Sheriff's deputies would work with other law enforcement agencies

and that in doing so, they may be asked to participate in, or allow, the constitutional violations of a criminal suspect. However, Box Elder County has no policy, procedure, or training in place to instruct its officers how to react when out of state agencies use Box Elder's resources and facilities to violate a suspect's constitutional rights or request that Box Elder employees violate a criminal suspect's rights on its behalf. Box Elder County's failure to adopt policies to prevent other counties and agencies from using its resources and facilities to violate criminal suspects' constitutional rights is a deliberate failure to adopt policies and provide the training necessary to prevent constitutional violations. Therefore, Box Elder County is liable for Plaintiffs' constitutional damage.

   2.  **Box Elder's Deliberate Indifference to the Risk that its Policies Plaintiffs First, Second, and Fourth Causes of Action Can Be Amended To Make a Plausible Claim Against Officers Berry, Moore and Maughan**

Box Elder Defendants have argued that neither Plaintiffs' First, Second, or Fourth Cause of action alleges the specific conduct of Defendants Berry, Moore, and Maughan.[50] However, Plaintiffs have alleged that Defendants Berry, Moore, and Maughan were all present, and participated in

---

[50] *See* Box Elder County Defendants' Motion for Judgment on the Pleadings pg. 6.

Plaintiffs arrest.[51] Each Defendant had knowledge of the description of the robbery suspect and his vehicle.[52] Each was able to use his judgment to ascertain the situation and should have determined that probable cause did not exist. Each was complicit and acted as a participant in Plaintiffs' unconstitutional arrest and detention.[53]

## A. Steve Berry's Specific Conduct

Steve Berry, was the first officer to arrive at the scene where Plaintiffs were waiting for AAA to arrive.[54] He coordinated with Walker and Zilles about how to proceed before initiating contact with Plaintiffs.[55] While Plaintiffs were ordered out of the car and handcuffed, Berry used excessive force, including aiming his rifle at Plaintiffs.[56] Mr. Fox was then placed in the back of Berry's truck.[57] Berry, acknowledged that there were issues concerning the arrest including the fact that Mr. McFarlin's Camarro did not match the description of the suspect's vehicle.[58] Berry also participated in the search of Mr. McFarlin's vehicle where no evidence of the robbery was

---

[51] *See* Complaint pgh 42; *See* Amended Complaint pgh. 46-60.?
[52] *See* Amended Complaint pgh. 31, 33.
[53] *See* Complaint pgh 42;s
[54] *See* Amended Complaint pgh. 36.
[55] *See* Amended Complaint pgh. 39.
[56] *See* Amended Complaint pgh. 40-42.
[57] *See* Amended Complaint pgh. 61.
[58] *See* Amended Complaint pgh. 47–60.

found.[59] Finally, Berry was the officer who transported Mr. Fox to the Box Elder County jail.[60]

## B. Z. Moore's Specific Conduct

Z. Moore arrived on the scene after Plaintiffs had been initially arrested.[61] He also had actual knowledge of the description of the robbery suspect and his vehicle.[62] Moore participated in the search of Plaintiffs' vehicle.[63] Moore, also failed to investigate or corroborate Plaintiffs' alibis.[64] Like the other officers present, Moore had the opportunity to evaluate the situation and deduce whether probable cause existed to arrest Plaintiffs.[65] Moore also coordinated with the other officers present to transport Plaintiffs and the Camaro back to the Box Elder County Sheriff's office.[66] Accordingly, Z. Moore actively participated in the violation of Plaintiffs' constitutional rights.

---

[59] *See* Amended Complaint pgh. 44-47.
[60] *See* Amended Complaint pgh. 61.
[61] *See* Amended Complaint pgh. 46.
[62] *See* Amended Complaint pgh. 31, 33.
[63] *See* Amended Complaint pgh. 46.
[64] *See* Amended Complaint pgh. 58.
[65] *See* Amended Complaint pgh. 46–60.
[66] *See* Amended Complaint pgh. 46–60.

### C. L. Maughan's Specific Conduct

In information recently provided to Plaintiffs, it appears that defendant Maughan was called to the scene but never participated in the arrest. Accordingly, the Proposed Amended Complaint removes Officer Maughan as a defendant. Plaintiff's request that any dismissal of Officer Maughan be without prejudice, in the event the defendants provide information that shows Officer Maughan participated in the constitutional deprivations.

## IV.   CONCLUSION

Plaintiffs have properly stated a claim against all of the Box Elder Defendants. Defendants have failed to provide adequate grounds and authority to show that BESO is a Non-Jural Entity and therefore, Plaintiffs' claims against it should not be dismissed.

Furthermore, through their amended complaint, Plaintiffs can plead sufficient facts more fully identifying why Box Elder County may be liable for violating Plaintiff's rights. Box Elder County adopted and/or failed to adopt policies in which it was reasonably certain that criminal suspect's constitutional rights would be violated by out of state agencies. Also, one of Box Elder County's final policy makers, Sheriff Potter, failed to adequately

supervise his employees by allowing them to arrest and hold Plaintiffs despite having actual knowledge that probable cause did not exist.

Finally, Plaintiffs have not failed to state a claim against the individual Utah defendants: Steve Berry and Z. Moore. Though adequately plead initially, Plaintiff's Amended Complaint make allegations with  more specificity.

L. Maughan has been removed from the suit in the Proposed Amended Complaint, based on information recently provided by Defendants.

For the foregoing reasons, the Court should deny the Box Elder Defendant's Motion for Judgment on the pleadings.


DATED this 19th day of June, 2019.

                                        MAY, RAMMELL & WELLS, CHTD.
                                        *Attorney for Plaintiffs*


                                        */s/  Bron Rammell*
                                        BRON RAMMELL

## <u>CERTIFICATE OF COMPLIANCE WITH THE<br>WORD-COUNT LIMIT</u>

I certify that Plaintiffs' Response to Box Elder Defendants' Motion for Judgment on the Pleadings Complies with the word-count limit of 6,500 words as established by local rule DUCivR 7-1(a)(3). The final word count of Plaintiffs' Response is 5,186.

DATED this 19th day of June, 2019.


By: */s/  Bron Rammell*
            May, Rammell & Wells, Chartered

<u>CERTIFICATE OF SERVICE</u>

     I certify that on this date a copy of the foregoing *Response to Box Elder Defendants' Motion for Judgment on the Pleadings* was served on the following named person(s) at the address(es) shown and in the manner indicated:


| | |
|---|---|
| BLAKE G. HALL, ESQ. | ☐ U.S. Mail |
| SAM L. ANGELL, ESQ. | ☐ Facsimile: |
| HALL ANGELL & ASSOCIATES, | ☐ Hand Delivered |
|  LLP | ☒ Email |
| 1075 S Utah Avenue, Suite 150 | ☒ CM/ECF |
| Idaho Falls, Idaho 83402 | |
| bgh@hasattorneys.com | |
| sla@hasattorneys.com | |


| | |
|---|---|
| Stephen F. Noel, Esq. | ☐ U.S. Mail |
| SMITH KNOWLES PC | ☐ Facsimile: |
| 2225 Washington Blvd, Ste 200 | ☐ Hand Delivered |
| Ogden, UT 84401 | ☒ Email |
| Email: snoel@smithknowles.com | ☒ CM/ECF |


DATED this 19th day of June, 2019.


             By: *<u>/s/  Bron Rammell</u>*
                  May, Rammell & Wells, Chartered