R. Blake Hamilton (11395)
Ashley M. Gregson (13716)
Ryan M. Stephens (16336)
**DURHAM JONES & PINEGAR, P.C.**
111 South Main Street, Suite 2400
Salt Lake City, UT 84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
bhamilton@djplaw.com
agregson@djplaw.com
rstephens@djplaw.com

ATTORNEYS FOR BOX ELDER COUNTY DEFENDANTS

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH NORTHERN DIVISION

| | |
|---|---|
| NEHEMIAH MCFARLIN, and ATOATASI FOX,<br><br>            Plaintiffs,<br><br>v.<br><br>BOX ELDER COUNTY; BOX ELDER COUNTY SHERIFF'S OFFICE; ADAM WALKER; JUSTIN ZILLES; SHANE NEBEKER; STEVEN BERRY; Z. MOORE; L. MAUGHAN; ONEIDA COUNTY; ONEIDA COUNTY SHERIFF'S OFFICE; SHERIFF JEFF SEMRAD; DETECTIVE PATSY SHERMAN; JOHN AND JANE DOES I-X,<br><br>            Defendants. | **BOX ELDER COUNTY DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY FEES**<br><br><br>Civil No.: 1:18-cv-00156-DAK<br><br>Judge Dale A. Kimball |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ....................................................................................................................... 4

I.     Plaintiff's request for attorney's fees and costs is unreasonable and should be
substantially reduced. ......................................................................................... 4

     A.      Calculating the Lodestar amount ............................................................ 4

         1.    Box Elder County Defendants are not responsible for time directed at the claims
against Oneida County and the Utah Highway Patrol Defendants. ........................... 5

         2.    Counsels' practice of block billing justifies a reduction in the lodestar amount. ........ 9

         3.    Plaintiffs' time entries that are vague, excessive, duplicative, or otherwise
unreasonable should be disregarded. ........................................................ 11

         4.    Mr. Rammell's legal rate should be reduced. ........................................................ 13

II.    Plaintiffs' Request for costs should be Reduced. ............................................................ 15

     A.      Plaintiffs' taxable costs should be denied because they did not file a bill of costs. .. 16

     B.      Plaintiffs' request for nontaxable costs should be significantly reduced. ................. 17

III.   Plaintiffs are not entitled to any post-Rule 68 offer attorney's fees And costs. ................ 18

IV.   The lodestar amount is Subject to a Downward Adjustment. ........................................... 19

CONCLUSION .................................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell v. Turner Recreation Comm'n*, No. 09-2097-JWL, 2010 WL 126189, at *2 (D. Kan. Jan. 8, 2010)..................................................................................................................... 5

*Bustamante v. Albuquerque Police Dep't*, No. CIV 88-0672-JP, 1991 WL 125307, at *5 (D.N.M. Apr. 24, 1991) .................................................................................................... 6

*Eckert v. Dougherty*, 658 F. App'x 401 (10th Cir. 2016) .............................................. 8

*Ellis v. University of Kansas Med. Ctr.*, 163 F.3d 1186 (10th Cir. 1998) .............................. 5, 13

*Flowers v. S. Reg'l Physician Servs., Inc.*, 286 F.3d 798 (5th Cir. 2002).................................... 20

*Gilmere v. City of Atlanta*, Ga., 864 F.2d 734 (11th Cir. 1989) .................................................. 6

*Goos v. Nat'l Ass'n of Realtors* ("Goos I"), 68 F.3d 1380 (D.C. Cir. 1995)............................... 20

*Griffin v. Strong,* 827 F. Supp. 683 (D. Utah 1993) ..................................................................... 11

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................................................ 5, 19, 20

*Hernandez v. Enchantment Auto Sales, Inc.*, No. CV 02-1399 RLP/RHS, 2004 WL 7337954, at *3 (D.N.M. Apr. 20, 2004) ........................................................................... 11

*HJ, Inc. v. Flygt Corp.*, 925 F.2d at 260 ......................................................................... 20

*Holland v. Roeser*, 37 F.3d 501 (9th Cir. 1994) .......................................................................... 18

*Huntsigner v. Idaho State University*, No. 14-CV-00237-BLW, 2016 WL 355473, at *1 (D. Idaho Jan. 28, 2016) .................................................................................................. 14

*In re Snow*, 603 B.R. 114 (Bankr. W.D. Okla. 2019). ................................................................... 9

*Jane L. v. Bangerter, 61 F.3d 1505* (10th Cir. 1995) ................................................................... 10

*Jensen v. W. Jordan City*, No. 2:12-CV-736-DAK, 2017 WL 4620983, at *19 (D. Utah Oct. 13, 2017) ................................................................................................................... 15

*Jones v. Federated Dep't Stores*, 527 F.Supp. 912 (S.D. Ohio 1981) ........................................ 18

*Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995) ..................................... 6

*Marek v. Chesny*, 473 U.S. 1 (1985).............................................................................................. 15

*Meyer Corporation v. Alfay Designs, Inc.*, 2016 WL 792398 (E.D.N.Y. Feb. 26, 2016) ........... 10

*Mitchell v. Moya*, No. CIV 95-0138 MV, 1998 WL 36030928, at *2 (D.N.M. Jan. 29, 1998) .............................................................................................................................. 11

*Mogck v. Unum Life Ins. Co. of America*, 289 F.Supp.2d 18 (S.D. Cal. 2003)........................... 11

*Oquendo v. City of Boise*, No. 1:15-CV-322-BLW, 2017 WL 874569, at *11 (D. Idaho Mar. 3, 2017) .................................................................................................................... 14

*Phelps v. Hamilton*, 120 F.3d 1126 (10th Cir. 1997)................................................................... 19

*Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983).................................................................. passim

*Robinson v. City of Edmond*, 160 F.3d 1275 (10th Cir. 1998) .................................................... 10

ii

*Said v. Virginia Commonwealth Univ./Med. Coll. of Virginia*, 130 F.R.D. 60 (E.D. Va. 1990) ................................................................................................................ 18

*Stearns v. Clarkson*, 615 F.3d 1278 (10th Cir. 2010) ................................................. 8

*Trustees of the Northern California Tile Industry Pension Trust Fund v. Premier Stone and Tile, Inc.*, 2016 WL 1182060 (N.D.Ca. Mar. 28, 2016) ................................. 10

*United States Football League v. National Football League*, 887 F.2d 408 (2d Cir. 1989) ................................................................................................................ 20

*Williams v. First Gov't Morgage & Investors Corp., 225 F.3d 746 (D.C. Cir. 2000* ................. 20

**Utah Statutes**

28 U.S.C. § 1920 .......................................................................................... 15, 16, 17

28 U.S.C. § 1924 ................................................................................................... 16

42 U.S.C. § 1988 ............................................................................................... 4, 15

**Rules**

DUCiv 54-2 ...................................................................................................... 16, 17

F.R.C.P. 26 ............................................................................................................ 12

F.R.C.P. 60 .................................................................................................... 1, 4, 19

F.R.C.P. 68 .................................................................................................... passim

SLC_5040752.1

Defendants Box Elder County, Box Elder County Sheriff's Office, Sergeant Steven Berry, Detective Zachary Moore, and Lawrence Maughan (collectively "Box Elder County Defendants"), by and through undersigned counsel, hereby submit this Memorandum in Opposition to Plaintiff's Motion for Attorneys' Fees.

## <u>INTRODUCTION</u>

Plaintiffs are requesting $225,595.84 in attorney's fees and costs. This is an outrageous request. It is difficult to imagine how Plaintiffs could have reasonably needed to bill over $200,000 dollars in attorney's fees for a case where the defendants' motion for judgment on the pleadings was still pending, the parties were in the middle of fact discovery, and they had not even entered into the summary judgment stage.

Plaintiffs' request for fees and costs is based on a Rule 68 offer of judgment entered by the Court. The judgment provides Plaintiffs Fox and McFarlin ("Plaintiffs") each $5,100 in damages. Box Elder County Defendants dispute that there was ever a valid Rule 68 agreement to support the entry of judgment. As a result, Box Elder County Defendants filed a Rule 60 (b) motion requesting relief from the judgment. That motion is currently pending before the Court. Since the Rule 68 agreement is void and the judgment should be vacated, Plaintiffs are not entitled to any fee award. If the Court decides to deny Box Elder County Defendants' Rule 60(b) Motion, then the Court should significantly reduce the amount requested based on the arguments in this Opposition.

Plaintiffs brought causes of action against three entities and several of their respective employees, including Box Elder County Defendants, Oneida County Defendants, and Utah Highway Patrol Defendants. As of March 3, 2020, Plaintiffs had settled all of their claims with

1

the Utah Highway Patrol and Oneida County Defendants for lump sum amounts that included

attorney's fees and costs. Box Elder County Defendants instead offered a nuisance value of

$5,100 dollars to each plaintiff and agreed to pay reasonable attorney's fees and costs that were

accrued up through January 6, 2020. Box Elder County Defendants are now the only defendants

left. As a result, Plaintiffs are attempting to force Box Elder County Defendants into shouldering

the fees for all of the parties. This is not permissible and Plaintiffs' requested fees should be

reduced to only those reasonable fees fairly attributable to Box Elder County Defendants.

## **BACKGROUND**

Plaintiffs' claims arise out of their arrest on December 14, 2016. Plaintiffs were arrested

as suspects to a bank robbery that occurred in Malad, Idaho earlier that day. Oneida County

deputies were investigating the bank robbery because it occurred within their jurisdiction in

Idaho. During their investigation, the Oneida County deputies determined that the suspect of the

bank robbery was a black male. He was seen driving a white four door vehicle with front end

damage and no license plate.[1] After information about the suspect was released to the public, a

citizen called the Oneida County Sheriff's Department to report that she had seen the suspect on

the Utah side of the border.[2]

Oneida County reported the citizen's tip to Box Elder County.[3] In response, Box Elder

County conducted a felony stop.[4] At the request of Oneida County, Box Elder County and the

Utah Highway Patrol transported Plaintiffs to the county jail so that Oneida County could

---

[1] Oneida County Police Report at p. 4, Ex. D; Pls.' Am. Compl. at 34-36 (Dkt. No. 83).
[2] Pls.' Am. Compl. at 38.
[3] Pls.' Am. Compl. at 40.
[4] Pls.' Am. Compl. at 51.

2

interrogate Plaintiffs. Box Elder County complied with Oneida County's request and allowed Oneida County to conduct their investigation at the Box Elder County Jail.[5]

At the jail, Oneida County interviewed both Plaintiffs. Box Elder County did not participate in the interviews and was not actively investigating the case.[6] After the interviews, Oneida County Sheriff Semrad requested that Oneida County Lt. Patsy Sherman work on getting a warrant to search Plaintiff's vehicle.[7] Because the Plaintiffs were in Utah, a Box Elder County Deputy submitted the affidavit and application for the search warrant based on facts provided by Oneida defendant, Lt. Sherman.[8] After the search of the vehicle, the Plaintiffs were released because there was no evidence of a bank robbery in the vehicle.

In response to being arrested, Plaintiffs filed a lawsuit based on alleged violations of their civil rights. Plaintiffs filed their Complaint on December 5, 2018 against defendants from three separate entities, Box Elder County, Oneida County, and the Utah Highway Patrol. Box Elder County Defendants answered the complaint and filed a motion for judgment on the pleadings on May 22, 2019. A few days later, Plaintiffs filed a motion to amend their complaint. On November 29, 2019, while Box Elder County's motion for judgment on the pleadings was still pending, Plaintiffs filed a second motion to amend their complaint.

---

[5] Pls.' Am. Compl. at 40; Depo. of Box Elder County Deputy Steven Berry ("Berry Depo.") at p. 14, ¶¶3-20, E.
[6] Depo. of Oneida Chief Detective Williams ("Williams Depo.") at pp. 126-128, attached as Ex. F.; Depo. of Oneida Chief Deputy Sherman ("Sherman Depo.") at p. 192, ¶¶15-17, attached as Ex. G.
[7] Oneida Email, Ex. H.
[8] Sherman Depo at p. 108, ¶¶3-11; p. 139, ¶¶11-22, Ex. G.

3

On January 6, 2020, Box Elder County Defendants served their Rule 68 offers of judgment on both Fox and McFarlin. The Rule 68 offers were for "$5,100 plus reasonable attorney fees, costs, and interest now accrued."  It is currently in dispute whether Plaintiffs ever accepted this offer.[9] But on March 12, 2020, before the Court was aware of the dispute, the Court entered judgment against Box Elder County Defendants. Based on the entry of judgment, Plaintiffs filed their motion requesting $225,595.84 in attorney's fees and costs.

## ARGUMENT

**I.      PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES AND COSTS IS UNREASONABLE AND SHOULD BE SUBSTANTIALLY REDUCED.**

If the Court denies Box Elder County's Rule 60 (b) motion, the fees requested by Plaintiffs should be significantly reduced.  Section 42 U.S.C. § 1988(b) provides that "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  Here, the Rule 68 offer includes a provision for "reasonable attorney's fees." Thus, the question before the Court is whether fees and costs totaling $225,595.84, or 43 times the amount each client received in damages, is reasonable. For the reasons set forth below, it is not.

### A.      Calculating the Lodestar amount

In the Tenth Circuit, courts use the Lodestar method to determine whether an attorney fee award is reasonable. This method requires that the reasonable rate be multiplied by the reasonable number of hours. An attorney seeking fees under § 1988 "must keep meticulous, contemporaneous time records to present to the court upon request."  *Ramos v. Lamm*, 713 F.2d

---

[9] *See* Box Elder County Defendants Rule 60 (b) Motion.

546, 553 (10th Cir. 1983).  In evaluating such time records, "billing judgment" should be used to distinguish between the time *actually* spent and the time *reasonably* spent.  *Id*. "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary*[…]." *Id*. (internal citation omitted) (emphasis in original). Therefore, Plaintiffs must make a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Also, in Plaintiffs' own words, "work done on issues or claims that [do] not relate to the issues and claims against the Box Elder Defendants" should be "removed from the hours claimed."[10]

Only the hours that are "reasonably expended on the litigation" should be included in the Lodestar amount. *Bell v. Turner Recreation Comm'n*, No. 09-2097-JWL, 2010 WL 126189, at *2 (D. Kan. Jan. 8, 2010) (citing *Ellis v. University of Kansas Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998)). Here, Plaintiffs' time records include entries that are vague, duplicative, irrelevant to any of Plaintiffs claims (let alone their claims against Box Elder County Defendants), excessive, and otherwise unreasonable. Therefore, Plaintiffs' Lodestar fee amount should be significantly reduced.

To ease the Court's review of Plaintiffs' time records, Box Elder County Defendants have prepared a chart detailing those records and their objections to each time entry, which is attached hereto as Exhibits A, B, and C.  The billing entries quoted and cited below are intended as only a few examples to illustrate the overall unreasonableness of Plaintiffs' fee request.

       1.     <u>Box Elder County Defendants are not responsible for time directed at the claims against Oneida County and the Utah Highway Patrol Defendants.</u>

---

[10] Pls.' Mot. at p. 12

In a case with multiple defendants, a prevailing litigant may not recover for hours devoted solely to claims against other parties. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995). A plaintiff, however, may recover fees for work done on interrelated claims where the "same factual information must be developed[.]" *Bustamante v. Albuquerque Police Dep't*, No. CIV 88-0672-JP, 1991 WL 125307, at *5 (D.N.M. Apr. 24, 1991) (unpublished). This is because defendants are only liable for the work reasonably necessary to succeed on the claims against them. When the facts and legal theories necessary to establish a defendant's liability are "distinctly different from the facts and theories necessary to establish the liability" of a different party, the district court has discretion to reduce the fees. *See Gilmere v. City of Atlanta*, Ga., 864 F.2d 734, 741 (11th Cir. 1989).

Although a plaintiff may assert a claim against "all defendants," that does not mean that the claim is based on the same legal theories or facts. The facts needed to establish liability could be unique for different parties. For example, the Eleventh Circuit has recognized that the facts and legal theories related to a municipal defendant being liable for an alleged constitutional violation are distinct from those required to hold an individual liable. *See Gilmere v. City of Atlanta*, *Ga.*, 864 F.2d 734, 741-72 (11th Cir. 1989)(affirming the district court's reduction in attorney's fees).

Here, Plaintiffs alleged constitutional violations for unlawful arrest, unlawful search and seizure, excessive force, and racial profiling by all defendants, and a due process violation solely directed at Oneida County Defendants.[11] Although Plaintiffs attempt to cast these claims as one

---

[11] Pls.' Am. Compl. at 36.

in the same, the legal theories and facts necessary to establish liability for the Box Elder County Defendants are distinct from other defendants.

Box Elder County's role in the arrest, vehicle search, and investigation was that of an assisting deputy. Nobody disputes that this was Oneida County's investigation.[12] Oneida County interviewed witnesses to the bank robbery;[13] Oneida County took photos of the Plaintiffs; Oneida County informed Box Elder County that a bank employee had positively identified the Plaintiff based on the photos;[14] Oneida County instructed Box Elder County to transport Plaintiffs to the county jail so that Oneida County could continue their investigation;[15] Oneida County interrogated the Plaintiffs;[16] Oneida County decided to conduct a search of the vehicle, provided the facts for the search warrant affidavit, and requested assistance from Box Elder County in applying for a warrant outside their jurisdiction;[17] and after Oneida County concluded its investigation, Oneida County Sheriff Semrad instructed Box Elder County to release the Plaintiffs.[18]

Determining liability for an assisting deputy is different from determining liability for a deputy in charge, because when "one [deputy] requests that another [deputy] assist in executing an arrest, the assisting officer is not required to second-guess the requesting officer's probable cause determination, nor is he required to independently determine that probable cause exists."

---

[12] Pls.' Am. Compl. at 82-83; Sherman Depo at p. 192, ¶¶15-17, Ex. G.
[13] Oneida County Police Report, p. 3-4, Ex. D.
[14] Pls.' Am. Compl. at 40; Berry Depo. at p. 14, ¶¶3-20, Ex. E.
[15] Berry Depo. at p. 14, ¶¶3-20, Ex. E.
[16] Pls.' Am. Compl. at 86.
[17] Sherman Depo. at p. 190 ¶¶1-15, Ex. G.
[18] Pls.' Am. Compl. at 166.

SLC_5040752.1

*Stearns v. Clarkson*, 615 F.3d 1278, 1286 (10th Cir. 2010). A deputy may also rely on "observations, statements, and conclusions of [other] officers[.]" *Eckert v. Dougherty*, 658 F. App'x 401, 407 (10th Cir. 2016)( "[A] police officer who acts in reliance on what proves to be the flawed conclusions of a fellow police officer may nonetheless be entitled to qualified immunity as long as the officer's reliance was objectively reasonable."). For an assisting deputy to be liable, a plaintiff must show that it was unreasonable for him to rely upon the other officers.

Therefore, the legal theories and facts necessary to demonstrate Box Elder County Defendants' liability are different from those required for holding Oneida County Defendants liable. Yet much of the discovery in this case was related to the details of Oneida County's investigation, and those details are not relevant to whether Box Elder County Defendants are liable. Oneida County could have conducted an in-depth investigation or no investigation at all. Either way, what is essential to holding Box Elder County Defendants liable is what Oneida County told Box Elder County about the suspects, whether true or not; what Box Elder County did at the scene of the arrest; and whether Box Elder County acted reasonably in relying on information provided by Oneida County. What Oneida County discovered during its investigation, or how thoroughly Oneida County investigated, is not relevant to Box Elder County Defendants. Therefore, time spent proving claims against Oneida County would not affect Plaintiffs' claims against Box Elder County Defendants.

Plaintiffs agree that "work done on issues or claims that [do] not relate to the issues and claims against the Box Elder Defendants" should be "removed from the hours claimed."[19]

---

[19] Pls.' Mot. at p. 12.

Plaintiffs have removed some of their time entries as a result. However, there are several entries that were not removed. For example, Plaintiffs removed the entry "Review Documents[,] Draft written discovery to *Oneida defendants*."[20] But Plaintiff's neglected to remove other similar entries like "work on and finalize reply brief re: *Oneida* and conference with Andrew with follow up instructions." They also did not remove time described as "Draft[ing] documents [and] Draft[ing] reply to *Oneida County* objection." There are also multiple entries that are too vague to determine the time counsel spent on work pursuing claims against Box Elder County versus other defendants.

Box Elder County Defendants have objected to Plaintiffs' time entries that are not reasonably necessary to pursue claims against them.[21] These time entries should be disregarded in the total calculation of the Lodestar amount. Box Elder County Defendants have also objected to entries that are too vague to determine at which defendant the fees were directed. These vague entries make it impossible to determine whether time was reasonably spent on the claims against Box Elder County Defendants.[22] Thus, the Court should either disregard or reduce the compensation awarded for these vague entries.

2.    Counsels' practice of block billing justifies a reduction in the lodestar amount.

Plaintiffs' time entries are rife with block billing. Block billing consists of attorneys recording blocks of time for tasks without separating the tasks or itemizing the amount of time each task took. *In re Snow*, 603 B.R. 114, 126 (Bankr. W.D. Okla. 2019). "The use of billing

---

[20] Oneida Email, Ex. H.
[21] *See* Table of Objections, Ex. A, B, and C.
[22] *Id.*

9

practices that camouflage the work a lawyer does naturally and quite correctly raise suspicions about whether all the work claimed was actually accomplished or whether it was necessary." *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998). In cases of block billing, the district court may reduce the overall award of fees. *See Jane L. v. Bangerter, 61 F.3d 1505, 1510* (10th Cir. 1995) (upholding district court's 35% reduction of requested attorney's fees on the grounds that the time records "failed to document adequately how plaintiffs' attorneys utilized large blocks of time"); *see also Trustees of the Northern California Tile Industry Pension Trust Fund v. Premier Stone and Tile, Inc.,* 2016 WL 1182060 (N.D.Ca. Mar. 28, 2016) (unpublished) (holding the fee award should be reduced by 20% due to block billing and other inefficiencies); *see Meyer Corporation v. Alfay Designs, Inc*., 2016 WL 792398 (E.D.N.Y. Feb. 26, 2016) (unpublished) (holding that hours spent on preparing for a hearing should be reduced by 50% due to block billing).

    Plaintiffs' most egregious examples of block billing include:

- Mr. Rammell billed 16 hours on November 20, 2019, stating "Prepare for deposition of Steve Berry and Justin Zilles attend deposition and complete deposition of Berry. Zilles' counsel had medical appointment that was a problem and created delay. Agree to vacate and reschedule, travel back to Pocatello, and prepare for deposition of Patsy Sherman and 30b6."

- That same day, associate Andrew Hart billed 14.3 hours for "Attend[ing] deposition of Steve Berry; prepare and travel time."

- Mr. Rammell billed 12 hours on June 19, 2019, for a time entry that stated "Work on response to Box Elder's motion to dismiss, work on motion to amend and amendment and motion re: service, extensive research and revisions looking to complete by midnight deadline."

- That same day, associate Andrew Hart billed one block of 12 hours that stated "Draft documents, motions, response to MJOP and motion for extension, amended complaint, motion to amend complaint."

10

These are examples of some of the longer time entries, but Plaintiffs also blocked out shorter periods of time that included several discrete tasks. Plaintiffs' practice of block billing obscures the time actually spent on certain tasks and prevents the Court and Defendants from assessing whether the time spent was reasonably necessary. Therefore, Box Elder County Defendants request that the Court disregard individual entries that are block billed or apply an across the board reduction for counsels' practice of block billing.

> 3.     Plaintiffs' time entries that are vague, excessive, duplicative, or otherwise unreasonable should be disregarded.

A plaintiff is not entitled to compensation for "time that is excessive, duplicative, or inadequately documented." *Jimenez v. Wood Cty*., 621 F.3d 372, 379–80 (5th Cir. 2010); *See also Ramos v. Lamm,* 713 F.2d 546 (10th Cir. 1983) ("[I]f the same task is performed by more than one lawyer, multiple compensation should be denied."); *Griffin v. Strong,* 827 F. Supp. 683, 686 (D. Utah 1993) (denying award of fees for overlapping, duplicative, and excessive litigation, and reducing fees for travel time)*; Mogck v. Unum Life Ins. Co. of America*, 289 F.Supp.2d 181, 192 (S.D. Cal. 2003) (denying requested fees for an attorney who attended a hearing, but did not participate); *Hernandez v. Enchantment Auto Sales, Inc*., No. CV 02-1399 RLP/RHS, 2004 WL 7337954, at *3 (D.N.M. Apr. 20, 2004) (unpublished) (non-lawyer work, such as leaving messages, scheduling depositions should not be compensated). Vague time entries should also be disregarded. *Mitchell v. Moya*, No. CIV 95-0138 MV, 1998 WL 36030928, at *2 (D.N.M. Jan. 29, 1998) (unpublished) ("vague entries make it extremely difficult for the Court to evaluate the nature of and need for the time").

Plaintiffs' bills contain excessive, duplicative, and vague time entries. A few examples

include the following:

- Mr. Rammell, a senior partner and the highest billing attorney on the case, billed approximately 9.9 hours researching venue prior to filing the lawsuit.[23]

- Mr. Rammell billed 12.1 hours demanding that Defendantsproduce documents with their initial disclosures, even though Rule 26 does not require the production of the documents Mr. Rammell was seeking.[24]

- Counsel billed nearly 100 hours to the case before filing their complaint.[25]

- Mr. Rammell had his associate, Andrew Hart, attend several depositions with him, including depositions in Utah. Mr. Hart did not ask questions during those depositions and is now requesting reimbursement for his attendance and travel at his full rate.

- Counsel spent an excessive amount of time preparing for depositions. For example, Mr. Rammell and his associates billed at least 24 hours preparing for the depositions of Berry and Zilles.[26] Both witnesses played a minor role in the case. Berry's deposition lasted 3 hours and 50 minutes (including time off the record), and Zilles' deposition lasted less than 1 hour.

- Mr. Rammell and Mr. Hart charged a full combined rate of $600 an hour to travel to the depositions in Utah. This is an unreasonable rate for travel time and should be reduced.

- Counsel also recorded over 100 hours of time entries which included time for internal conferences, meetings, and discussions for which multiple lawyers billed their time.[27]

---

[23] Table of Objections, lns. 25-28 Ex. A.

[24] *Id.* at lns. 112, 114, 116-117, 121-122, 124.

[25] *Id.* at lns. 1-77.

[26] *Id.* at lns. 246, 267, 268, 270, 272, 273.

[27] Due to block billing, it is impossible to know exactly how much time counsel spent having internal discussions and conferences about the case. Combining internal conferences with other tasks obscures how long the attorney actually spent in conference. The 100 hours total does not include the internal conferences referenced in the large blocks of time counsel billed for several of the depositions.

12

These are just a few examples. Box Elder County Defendants have identified over 230 hours of time entries that contain descriptions of excessive, duplicative, or otherwise unreasonable work.[28]

4.    <u>Mr. Rammell's legal rate should be reduced.</u>

A reasonable rate for attorney's fees is determined by the reasonable rate in the "relevant community." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). Although it is not conclusive, counsel's billing rate is also relevant. *See Ellis v. Univ. of Kansas Med. Ctr.,* 163 F.3d 1186, 1203 (10th Cir. 1998). The district court is also authorized to consider the quality of counsel's performance in the case when placing a value on his services. *Id.* Mr. Rammell's hourly rate of $425 should be reduced to more closely align with his original hourly rate in this case of $350 and the rate of Plaintiffs' local counsel, Daniel Steele.

Here, the "relevant community" for the market rate is the community in the District of Utah, Northern Division. Plaintiffs' lead counsel is an attorney practicing in Pocatello, Idaho. The alleged constitutional violations took place just across the Utah border in Box Elder County. It is Plaintiffs' burden to demonstrate that the claimed rates are reasonable. In doing so, Plaintiffs submitted affidavits from well-known civil rights attorneys in Utah. But all of these attorneys are based out of Salt Lake City, rather than the Northern Division of the District of Utah. And despite Mr. Rammell's claim that reasonable rates in the community are up to $500 an hour, none of the affidavits support such a high rate in this type of civil rights case. Rocky Anderson attested to the highest reasonable rate for this case, which he said was up to $450 an hour.

---

[28] Table of Objections, Ex. A, B, and C.

13

Although Plaintiffs' affidavits may be relevant to the reasonable rate, there are other factors the Court should also consider. The first consideration is Mr. Rammell's own hourly rates. In his affidavit, Mr. Rammell cites a case where he claims he received "$395.00 per hour with no reduction in [his] hours."[29] *See Oquendo v. City of Boise*, No. 1:15-CV-322-BLW, 2017 WL 874569, at *11 (D. Idaho Mar. 3, 2017) (unpublished). Mr. Rammell's affidavit implies that a district court approved his rates and billing hours. But the decision he cites is a decision on a motion for summary judgment,[30] and has nothing to do with attorney's fees. Box Elder County Defendants can only speculate that the case settled privately without the Court having to decide the amount of attorney's fees or whether the rate was reasonable.

In *Huntsigner v. Idaho State University*, the district court granted Mr. Rammell attorney's fees for his work on a civil rights case, but his reasonable rate in that case was just $250.00. *See* No. 14-CV-00237-BLW, 2016 WL 355473, at *1 (D. Idaho Jan. 28, 2016) (unpublished). In this case, Mr. Rammell agreed to a rate of $350.00 an hour with Fox and McFarlin.[31] These rates are relevant to Mr. Rammell's reasonable rate in this case.

More importantly, however, is Daniel Steele's affidavit. Mr. Steele is local counsel on this case. He is a Utah attorney that has been practicing law for as long as Mr. Rammell and has an hourly rate of $375.00. Mr. Steele stated in his affidavit that his "billing rate for this matter [$375.00] is reasonable and consistent with other similarly qualified attorneys in this area [Utah]

---

[29] Pl.'s Mot. at p. 21.
[30] Mr. Syke's also cites this case in his affidavit as evidence that a court approved of Mr. Rammell's $395.00 fee.
[31] Pls.' Mot. at p. 34.

and given the years [he] has been in practice."[32]  Notably, Mr. Steele does not state anywhere in

his declaration that Mr. Rammell's hourly rate of $425 is a reasonable rate. And although local

counsel may not bill as many hours as lead counsel, local counsel owes the same legal and

ethical obligations to the client. As Mr. Rammell stated in his affidavit, local counsel's work on

this case "was necessary and indispensable to moving this case forward and establishing the

[Plaintiffs' claims]." There is also no indication that Mr. Steele lowered his rate for being local

counsel rather than lead counsel. Thus, Mr. Steele's rate of $375.00 is the best evidence of what

a reasonable rate should be in this case, and the Court should reduce Mr. Rammell's rate

accordingly.[33] *See Jensen v. W. Jordan City*, No. 2:12-CV-736-DAK, 2017 WL 4620983, at *19

(D. Utah Oct. 13, 2017) (unpublished) (lowering counsel's rate from $350 to $285 based on the

attorney fees charged by a focus group hired by the plaintiff).

## II.     PLAINTIFFS' REQUEST FOR COSTS SHOULD BE REDUCED.

As part of the judgment entered against Box Elder County Defendants, Plaintiffs are

entitled to costs. *See Marek v. Chesny*, 473 U.S. 1, 9 (1985). In the context of Rule 68, "costs"

means "all costs properly awardable." *Id.* Awardable costs include taxable costs pursuant to 28

U.S.C. § 1920 and nontaxable costs allowed by 42 U.S.C. § 1988. Box Elder County objects to

Plaintiffs' request for both types of costs. First, Plaintiffs waived their right to any taxable costs

because they failed to comply with the local rules for taxing costs. Second, Plaintiffs' request for

nontaxable costs should be significantly reduced because they are inadequately documented.

---

[32] Pls.' Mot. at p. 53.
[33] With that reduction, Mr. Rammell would still be making $25.00 dollars more an hour than
what he had arranged for in his fee agreement.

A.      **Plaintiffs' taxable costs should be denied because they did not file a bill of costs.**

Taxable costs are controlled by the "general cost statute, 28 U.S.C. § 1920[.]" *Ramos v. Lamm*, 713 F.2d 546, 560 (10th Cir. 1983). Under Section 1920 "[a] bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree." In the District of Utah a party entitled to recover costs must file a bill of costs within fourteen (14) days after the entry of final judgment. *See* DUCiv 54-2(a). The party must file the "bill of costs on a form available from the clerk of court, [a] memorandum of costs, and a verification of bill of costs under 28 U.S.C. § 1924." The party must also "reference and include copies of applicable invoices, receipts, and disbursement instruments." DUCiv 54-2(a).

Here, Plaintiffs did not file a bill of costs on the form available from the Court and did not provide the additional documentation required by DUCiv 54-2(a), including copies of invoices and receipts. Instead, Plaintiffs requested their taxable costs in their motion for attorney's fees. But without filing a bill of costs, Plaintiffs are not entitled to have their taxable costs awarded. Plaintiffs' deadline to file a bill of costs was March 26, 2020.[34] Therefore, Plaintiffs have waived their right to be awarded taxable costs.

The Court should therefore deduct the following taxable costs from the total award requested in Plaintiffs' motion:

---

[34] The Court entered judgment against Box Elder County Defendants on March 12, 2020. This is the date Plaintiffs first became eligible to file a Bill of Costs.

16

| Cost: | Description:[35] |
|---|---|
| 855.00 | Filing Fee, Paid By Office Check #12489 to D Steele |
| 705.87 | Check #13094 to Advanced Reporting Solutions |
| 1,011.04 | Service- Paid by office check #13130 to Advance Reporting Solution |
| 1,931.60 | Service- Paid by office check # 13113 to M&M Court Reporting |
| 760.39 | Check #13146 to Advanced Reporting Solutions |
| 1,649.17 | Service- Paid by office check # 13156 to Advanced Reporting Solutions |
| 312.94 | Service- Paid by office check # 13172 to Advance Reporting Solutions |
| **TOTAL:** | **$ -7,226.01** |

B.     **Plaintiffs' request for nontaxable costs should be significantly reduced.**

Plaintiffs' claims for nontaxable costs should be significantly reduced because they are either excessive and vague. Plaintiffs' paid local attorneys $4,500 to draft affidavits. Not only is this cost prohibited by Box Elder County's Rule 68 offer, but it is also excessive. Plaintiffs also include descriptions of costs that are too vague to determine whether they were reasonably necessary.[36] For example, some entries provide no detail about what the cost was for. On October 31, 2019, Plaintiffs recorded costs of $59.00 for "Check # 13041 to Sumison, Steele, & Crandall." Plaintiffs also have over thirty entries that simply state "travel costs associated with

---

[35] These taxable costs consist of court filing fees and deposition costs. Both are taxable and subject to the requirements of 28 U.S.C. § 1920 and local rule DUCiv 54-2. *See Ramos v. Lamm,* 713 F.2d 546, 560 (10th Cir. 1983) (fees of the court reporter for depositions and copies of depositions are subject to 28 U.S.C. § 1920).
[36] *See* Pls.' Mot. at p.38.

deposition including mileage, hotel, & meals."[37] Since Plaintiffs did not provide any receipts or other verification of travel, lodging, or food, it is impossible to determine whether these costs were reasonable. Thus, the Court should disregard or significantly reduce Plaintiffs' requested costs.

### III.    PLAINTIFFS ARE NOT ENTITLED TO ANY POST-RULE 68 OFFER ATTORNEY'S FEES AND COSTS.

Plaintiffs are not entitled to post-Rule 68 offer attorney's fees and costs. A Rule 68 settlement agreement for "attorney's fees *now accrued*" explicitly precludes a plaintiff from post-offer fees. *See Holland v. Roeser,* 37 F.3d 501, 504 (9th Cir. 1994) (stating a Rule 68 agreement that includes the term"'[c]osts now accrued' clearly limits costs to those that accrued prior to the offer."); *Said v. Virginia Commonwealth Univ./Med. Coll. of Virginia*, 130 F.R.D. 60, 64 (E.D. Va. 1990) (holding that plaintiff was not entitled to attorney fees for the petition for work that was done after the offer of judgment was made when Rule 68 agreement was for "costs accrued to this date."); *Jones v. Federated Dep't Stores*, 527 F.Supp. 912, 921 (S.D. Ohio 1981) (court declined to grant fees for work done on the attorney's fees issue because the language of the settlement offer explicitly excluded, as "costs," post-settlement attorneys' fees). In *Holland v. Roeser*, the defendant's Rule 68 Offer did *not* include the "now accrued" language to limit the attorney's fee award. As a result, the plaintiff was able seek post-offer fees. 37 F.3d 501 (9th Cir. 1994). Here, Plaintiffs' fee award is based on the Rule 68 offer from Box Elder County that only allowed for fees and costs "now accrued." Thus, Plaintiffs are not entitled to any post-offer fees.

---

[37] *Id.*

18

The cases cited by Plaintiffs in support of their claim for post-offer attorney's fees are all cases where the plaintiff rejected a Rule 68 offer. In those cases, there was no Rule 68 agreement in place with language explicitly cutting off fees. Thus, those plaintiffs were entitled to fees for collecting their fees. Here, Box Elder County's Rule 68 offer was for "five thousand, one hundred, dollars ($5,100), plus reasonable attorney fees, costs, and interest *now accrued*."[38] The intent of the offer, as demonstrated by its explicit language, was to award Plaintiffs' costs and fees up to the date of the offer only. Although Plaintiffs removed the "now accrued" language from the offer when they purportedly accepted it, it does not change the fact that Box Elder County only offered to pay for costs and fees up until January 6, 2020.[39] Thus, Plaintiffs' request for post-offer fees of over $9,500.00 should be denied.[40]

## IV.   THE LODESTAR AMOUNT IS SUBJECT TO A DOWNWARD ADJUSTMENT.

Once the court determines the Lodestar, the Court may consider whether a downward adjustment should be made to the Lodestar "to account for the particularities of the suit and its outcome." *See Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997). One justification for adjusting the final lodestar amount downward is the degree of success of the Plaintiff. *See Hensley v. Eckerhart*, 461 U.S. 424, 436–37, 440 (1983). "Awarding attorneys' fees based on the damages, or degree of success obtained, is completely in line with the holdings of the Supreme

---

[38] Box Elder County Defendants' Offers of Judgment, Ex. K.

[39] Plaintiffs' Notices of Acceptance, Ex. L; Box Elder County Defendants maintain that the Rule 68 agreement is void based on Plaintiffs' violation of the mirror image rule. *See* Defendants Rule 60 (b) Motion.

[40] Although Plaintiffs' counsel omitted some time entries after the offer, they did not omit all of them. Daniel Steele has requested around $862.50 for work done after the offer. Counsel also requests post-offer fees for drafting the fee petition. The total amount related to the fee petition is $8,665.00. *See* Pls.' Motion for Attorney's Fees at pp. 12-13, 58 and Exhibit B (Dkt. No. 104).

19

Court[…]." *Flowers v. S. Reg'l Physician Servs., Inc.*, 286 F.3d 798, 802 (5th Cir. 2002). The

fees awarded on a successful claim "must be reasonable in relation to the success achieved."

*Williams*, 225 F.3d at 746; *see also Goos v. Nat'l Ass'n of Realtors* ("Goos I"), 68 F.3d 1380,

1387 (D.C. Cir. 1995) ("[I]f the district court determines and explains why the total hours

expended were not reasonable in relation to the results obtained – regardless of the number of

claims raised – the court has discretion to reduce fees."). When a plaintiff's claims cannot be

disentangled, the district court's focus should shift to the results obtained and adjust the Lodestar

accordingly. *Hensley*, 461 U.S. at 436–37 ("The district court may attempt to identify specific

hours that should be eliminated, or it may simply reduce the award to account for the limited

success."); *HJ, Inc.*, 925 F.2d at 260 (permitting district court to either cut non-successful hours

or reduce Lodestar to reflect success); *United States Football League v. National Football

League*, 887 F.2d 408, 414 (2d Cir. 1989) (holding that district court did not abuse discretion in

reducing lodestar rather than cutting non-successful hours), cert. denied, 493 U.S. 1071 (1990).

Here, Plaintiffs' success against Box Elder County Defendants was minimal compared to

the $225,595.84 in costs and fees their attorneys are requesting. To justify this enormous award,

Plaintiffs' counsel attempts to downplay the significance of the money damages they sought

during this case. In so doing, Plaintiffs now want to make this case all about receiving an

"acknowledgment of civil rights violations," not about damages.[41] But Plaintiffs' own actions

during the case betray them.

---

[41] Pls.' Mot. at p. 29.

SLC_5040752.1

On January 29, 2019, Oneida County Defendants offered to allow Plaintiffs to enter judgment against them. Instead of taking the judgment, both Plaintiffs rejected the offer and later entered into private settlements with Oneida County that disclaimed all liability. Plaintiff Fox entered into a settlement agreement with Oneida County on February 22, 2019, for a total of $5,000 that included attorney's fees and costs. Plaintiff McFarlin, however, continued to prosecute his claims against Oneida County. Finally, after Box Elder County and Utah Highway Patrol had already reached an agreement with both Plaintiffs, Oneida County and McFarlin settled on February 3, 2020, for a total of $10,000 that included attorney's fees and costs.[42] Despite litigating his claims against Oneida County longer than any other party, McFarlin did not come away with an acknowledgement that his civil rights were violated.

Plaintiffs also entered into a private settlement that disclaimed all liability with the Utah Highway Patrol Defendants. The settlement was for a total of $21,000, and it included attorney's fees and costs.[43] Although Plaintiffs wish to portray these settlements as meeting their supposed goal of the Defendants "acknowledg[ing] civil rights violations," these settlements did the opposite. They explicitly denied any violations.

Box Elder County served a Rule 68 offer on Plaintiffs that explicitly disclaimed all liability. Instead of negotiating to have the liability disclaimer removed from the agreement, Plaintiffs' requested to have the money in the offer doubled. Mr. Rammell even told Box Elder County's counsel that he may have to share his attorney's fee award with his clients to provide a

---

[42] Oneida County Settlement Documents, Ex. I.
[43] Utah Highway Patrol Settlement Documents, Ex. J.

big enough monetary incentive for his clients to take the offer.[44] And despite the case being

nowhere near trial, Plaintiffs' counsel billed his clients two hours for trial preparation focused on

"points that will impact the jury regarding *damages*[.]"[45] All of these actions demonstrate that

Plaintiffs' goals in this case were more focused on receiving money damages than receiving

declarations or acknowledgements of civil rights violations.

Plaintiffs' Complaint requested a *minimum* of $10,000 dollars. Box Elder County

Defendants offered to settle with each Plaintiff for half that amount. Box Elder County

Defendants did not acknowledge any wrongdoing and did not change any policies or practices as

a result of this lawsuit. Thus, Plaintiffs' degree of success in this case does not justify an award

of fees and costs that is 43 times greater than their individual payouts.

**CONCLUSION**

Based on the foregoing, Box Elder County Defendants respectfully request that the Court

substantially reduce Plaintiffs' requested fee award in accordance with the arguments in this

Opposition and the objections provided in the exhibits.

DATED this 29th day of May, 2020.

**DURHAM JONES & PINEGAR, P.C.**

/s/ R. Blake Hamilton
R. Blake Hamilton
Ashley M. Gregson
Ryan M. Stephens
Attorneys for Box Elder County
Defendants

---

[44] The fact that Plaintiffs' counsel was willing to share his attorney fee award with his clients is further evidence that his requested fees reflect more than what he believes is reasonable compensation for his time on the case.
[45] Table of Objections, ln. 201, Ex. A (emphasis added).

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing document was served this 29th day of May, 2020, via electronic filing upon the following:

Daniel L. Steel (6336)
Grant M. Sumsion (6445)
SUMSION STEELE & CRANDALL
545 E. University Parkway, Suite 200
Orem, Utah 84097
dan@sumsionsteele.com
grant@sumsionsteele.com

Blake G. Hall
Sam L. Angell
HALL ANGELL & ASSOCIATES, LLP
1075 S. Utah Ave., Suite 150
Idaho Falls, Idaho 83402
bgh@hasattorneys.com
sla@hasattorneys.com

Stephen F. Noel
SMITH KNOWLES PC
2225 Washington Blvd., Ste. 200
Ogden, Utah 84401
snoel@smithknowles.com

Bron Rammell
Andrew Hart
MAY RAMMELL & WELLS
216 W. Whitman St.
Pocatello, ID 83204
bron@mrtlaw.net

Darin B. Goff
Assistant Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114
dgoff@@agutah.gov

/s/ Melani Thatcher
Paralegal

23

SLC_5040752.1