## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **NEHEMIAH McFARLIN and ATOATASI FOX,**<br><br>          **Plaintiffs,**<br><br>**vs.**<br><br>**BOX ELDER COUNTY; BOX ELDER COUNTY SHERIFFS OFFICE; ADAM WALKER, individually; JUSTIN ZILLES, individually: STEVEN BERRY, individually; Z. MOORE, individually, SHANE NEBEKER, individually: L. MAUGHAN, individually; ONEIDA COUNTY; ONEIDA COUNTY SHERIFFS OFFICE; SHERIFF JEFF SEMRAD, individually; DETECTIVE PATSY SHERMAN, individually; and JOHN and JANE DOES I–X, individually,**<br><br>          **Defendants**. | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 1:18-CV-00156-DAK**<br><br>**Judge Dale A. Kimball** |

        This matter is before the court on: Plaintiffs' Motion for Award of Attorney Fees pursuant to Federal Rule of Civil Procedure 54(d) and 42 U.S.C §1988; Plaintiffs' Motion to Strike; and Defendants' Motion for Relief from Judgment pursuant to Federal Rule of Civil Procedure 60(b). The court has carefully considered the parties' memoranda and other materials submitted. Now being fully advised, the court enters the following Order.

## DISCUSSION

### *Background*

        On March 12, 2020, the court entered judgment (the "Judgment") in favor of Plaintiffs according to Defendants January 6, 2020 Offer of Judgment (the "Offer"). The Judgment entitles

Plaintiffs to reasonable attorney fees, costs, and interest. On April 29, 2020, Plaintiffs filed their Motion for Fees, requesting $225,595.84. This sum includes attorney fees of $197,544.50 for work done by Bron Rammell and the firm May, Rammell & Wells Chtd., $6,248 for work done by Daniel Steele (local counsel), and $4,165 for preparing and filing the Motion for Fees. Also included are costs of $15,802.34 spent pursuing the claims and $4,500 for costs incurred while preparing the Motion for Fees.

In reaching these totals, Plaintiffs' counsel eliminated hours they determined to be for work done on claims or issues not related to the Box Elder Defendants, time spent on the extension for service of process against the Utah Highway Patrol Defendants ("UHP"), and hours that Plaintiffs' counsel believed to be "insufficiently descriptive." Altogether, those deductions amount to 52.3 hours. Plaintiffs' counsel also included several affidavits to support the reasonableness of their hourly rates.

In response, Defendants filed an Opposition to Plaintiffs' Motion for Fees and a Motion for Relief from Judgment. In both the Opposition and the Motion for Relief, Defendants argue Plaintiffs are not entitled to fees or costs incurred after Plaintiffs accepted the Offer. In addition, Defendants' Opposition argues that the fees should be reduced for a multitude of reasons. The Opposition also prompted Plaintiffs to file a Motion to Strike.

### A. Motion for Relief from Judgment

The court must first determine whether Defendants are entitled to relief from judgment before it can discuss Plaintiffs' motions. On January 6, 2020, Defendants served a Rule 68 Offer of Judgment on both Plaintiffs. Defendants offered "$5,100, plus reasonable attorney fees, costs, and interest ***now accrued.***" After some communication between the parties, Plaintiffs agreed to accept (the "Acceptance") the Offer. The Acceptances state that the settlement is for $5,100 to be

paid to each Plaintiff (total of $10,200) "plus reasonable attorney fees, costs, and interest." On January 23, 2020, Plaintiffs' counsel filed Defendants' Offers (which includes the "now accrued" language) and Plaintiffs' Acceptances (without the "now accrued" language). On March 12, 2020, the court entered Judgment based on those Offers and Acceptances. The Judgment does not contain the "now accrued" language.

On April 29, 2020, Plaintiffs filed their Motion for Fees, which requested the costs and fees incurred in filing the Motion. One month later, Defendants filed their Opposition to the Motion for Fees and a Motion for Relief from Judgment. Defendants argue they are entitled to relief from judgment under the Federal Rules of Civil Procedure, Rule 60(b)(1), (2), (4), or (6). While Defendants have stated that four subsections of Rule 60(b) apply, the entirety of their argument is that the Judgment is void and relief should be granted under Rule 60(b)(4).[1]

According to Defendants, the omission of "now accrued" from the Acceptances should be construed as a counteroffer or, in the alternative, that the Acceptances violated the mirror image rule and altered the material terms of the Rule 68 Offer (*i.e.*, there was no meeting of the minds). Thus, Defendants argue, the Judgment is invalid. For the reasons set forth below, the court finds that the Judgment is valid and Defendants are not entitled to relief from judgment.

Under Rule 60(b)(4) of the Federal Rules of Civil Procedure, a court may provide relief from a final judgment if the judgment is void. However, relief under Rule 60(b) "is extraordinary and may only be granted in exceptional circumstances." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999). "A plaintiff must overcome a higher hurdle to obtain relief from a post-judgment motion than on direct appeal from a judgment." *LeFleur v. Teen Help*, 342 F.3d 1145,

---

[1] Since Defendants' arguments do not address Rule 60(b)(1), (2), or (6), the court will not consider those subsections.

1153 (10th Cir. 2003). It is inappropriate for a party to use a Rule 60(b) motion to advance "new arguments or supporting facts which were otherwise available" to the party when the judgment or order was being litigated. *See Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). Nevertheless, a judgment based on an invalid Offer of Judgment must be vacated under Rule 60(b) of the Federal Rules of Civil Procedure.

To determine the validity of an Offer of Judgment, courts are generally "guided by principles of contract law." *Medina v. Hous. Auth. of San Miguel Cty.*, 974 F.2d 1345, *2 (10th Cir. 1992) (unpublished) (citations omitted). There are, however, unique features of Rule 68 Offers that differ from general contract law principles. "Unlike traditional settlement negotiations, in which a plaintiff may seek clarification or make a counteroffer, a plaintiff faced with a Rule 68 offer may only accept or refuse." *Utility Automation 2000, Inc. v. Choctawhatchee Ele. Co-op, Inc.*, 298 F.3d 1238, 1240 (11th Cir. 2002). This means that a Plaintiff may not make a valid counteroffer or negotiate or amend the terms of the offer. Thus, the common law mirror image rule is of particular importance in Rule 68 Offers. *See Medina*, 974 F.2d at *2. "Notwithstanding [the mirror image rule], an acceptance must receive a reasonable construction. Immaterial variances between the offer and acceptance will be disregarded and the mere addition of a collateral or immaterial matters will not prevent the formation of a contract." *Raydon Expl., Inc. v. Ladd*, 902 F.2d 1496, 1500 (10th Cir. 1990) (collecting cases); *see also R.J. Daum Const. Co. v. Child*, 247 P.2d 817, 820 (Utah 1952).

Defendants' arguments that the Acceptances violate the mirror image rule or are improper counteroffers or rejections of their Rule 68 Offers are unpersuasive. These arguments may have been valid had Plaintiffs not conceded that the "'now accrued' language was part of the agreement" and "stipulate[d] to and request[ed] a modification of the Judgment under [Rule]

4

60(a)" of the Federal Rules of Civil Procedure. Thus, given the nature of Rule 68 Offers, Plaintiffs' concessions, and discretion granted to the court under Rule 60(a) of the Federal Rules of Civil Procedure, the court will modify the Judgment to mirror the language of Defendants' Offer.[2] The Judgment and Acceptances should have mirrored the Offer's language all along. With the Judgment now reflecting the correct language, Defendants' mirror image, counteroffer, and rejection arguments are irrelevant. Thus, the only remaining issue is whether the Judgment and Acceptances are invalid because the parties had no meeting of the minds.

Defendants complain that there was no meeting of the minds because the parties disagree whether post-Acceptance fees and costs are allowed by the Offer. Defendants' argument overstates what is required to establish a meeting of the minds. Under contract law, a meeting of the minds does not require a perfect, mutual understanding of every term in an agreement. "If [a party's] words or acts, judged by a reasonable standard, manifest an intention to agree to the matter in question, that agreement is established, and it is immaterial what may be the real but unexpressed state of his mind upon the subject." *Allen v. Bissinger & Co.*, 219 P. 539, 541–42 (Utah 1923). While there may be some disagreement over terms in a contract, the parties must agree on the essential terms. *See John Deere Co. v. A & H Equip., Inc.*, 876 P.2d 880, 884 (Utah Ct. App. 1994) (citation omitted). Courts determine if a term is essential by looking at the entire agreement and the context in which it was signed. *Id.* (citation omitted).

Here, the parties are entering into a Rule 68 settlement agreement. Essential to this agreement are four provisions: judgment would be entered against Defendants; Plaintiffs would release Defendants from all claims; Defendants would pay Plaintiffs $5,100 each; and

---

[2] The court finds it is appropriate and necessary to modify the judgment due to the rigid rules regarding how Rule 68 Offers may be accepted. *See Utility Automation 2000, Inc.*, 298 F.3d at 1240.

Defendants would pay Plaintiffs some unspecified amount for fees, costs, and interest. All parties clearly manifested an intention to be bound by those four essential terms of the Offer. A dispute about the interpretation of "now accrued" is not sufficient to demonstrate that the parties did not have a meeting of the minds as to the Offer's essential terms. Therefore, the Judgment as now amended is valid and the court denies Defendants' Motion for Relief from Judgment.

Before turning to Plaintiffs' motions, the court finds it makes the most sense to first resolve the dispute over whether the language[3] in the Offer and Judgment permits Plaintiffs to recover post-Acceptance fees and costs. Plaintiffs argue that the language at issue is ambiguous because "[b]ased on syntax in Defendants' offer, the term 'now accrued,' only limits and applies to 'interest'" and that the post-Acceptance fees incurred for seeking attorney fees are routinely awarded in civil rights cases. Defendants disagree, arguing that interest was simply the last word a list, all of which are limited by the "now accrued" language and, therefore, the Offer's language is unambiguous. The court agrees with Defendants.

The court recognizes that in the context of Rule 68 Offers, the principle of resolving ambiguity against the drafting party has added force. *See Util. Automation 2000, Inc.*, 298 F.3d at 1244 (noting that any ambiguity in the terms must be resolved against its drafter "[b]ecause Rule 68 puts plaintiffs at their peril whether or not they accept the offer." (citation omitted)). When read out of context, the language *could* be read as Plaintiffs suggest. In context, however, the language is unambiguous and prohibits Plaintiffs' recovery of any costs, fees, or interest they incurred after their Acceptance. The language is unambiguous because the purpose of Rule 68 Offers is to set the date upon which the parties shift the risk of paying the other party's fees. *See*

---

[3] Specifically, the language is: "$5,100, plus reasonable attorney fees, costs, and interest now accrued."

*Delta Air Lines, Inc. v. Aug.*, 450 U.S. 346, 352, n.9 (1981); *see also* Fed. R. Civ. P. 68(d)*; Stein*

*v. Buccaneers Ltd. P'ship*, 772 F.3d 698, 702 (11th Cir. 2014). With the purpose of Rule 68

Offers in mind, a plain reading of the Offer and Judgment indicates that "now accrued" was

intended to cut off all fees, costs, and interest at Acceptance. Accordingly, the court concludes

that Plaintiffs may not recover costs, fees, or interest they incurred after January 23, 2020.

Thus, for the foregoing reasons, the court will reduce Mr. Rammell's fee request by

$4,165, Mr. Steele's fees by $300 (0.8 hours), and costs by $4,500.

### B. Motion to Strike

After Defendants filed their Memorandum in Opposition to Plaintiffs' Motion for Fees,

Plaintiffs filed a Motion to Strike three exhibits attached to the Opposition.[4] Plaintiffs complain

that Exhibits A, B, and C (the "Exhibits") should not be considered by the court. Specifically,

Plaintiffs object to the Exhibits because: (1) they add argument beyond the permitted page limits;

(2) they lack proper foundation and violate Rule 11 of the Federal Rules of Civil Procedure; (3)

they are not demonstrative exhibits; and (4) the original billing statements speak for themselves.

The court overrules all four objections and will address each in turn.

First, the court disagrees that the Exhibits are "additional ninety-five pages of argument,

objections, and unsupported factual assertions." The court is unaware of any factual assertions

contained in the Exhibits. Also, Defendants do not raise new or additional arguments in the

Exhibits. Rather, Defendants have simply copied Plaintiffs' billing statements and pointed out

---

[4] For the purposes of this Order, the court will construe Plaintiffs' Motion to Strike as an objection to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Fees. Defendants correctly point out that the local rules dictate that Plaintiffs' Motion to Strike should have been filed as an objection and that "[m]otions to strike evidence as inadmissible are no longer appropriate and should not be filed." DUCivR 7-1(b)(1)(A)(B).

which objections pertain to each billing entry. The court finds nothing improper in so doing. Accordingly, the court overrules this objection.

Second, the court disagrees that the Exhibits lack proper foundation or violate Rule 11 of the Federal Rules of Civil Procedure. The court finds that Rule 603 of the Federal Rules of Evidence has no relevance in this matter. There is no witness offering testimony or making factual assertions for which she would be required to lay proper foundation or show personal knowledge. As for Plaintiffs' Rule 11 objection, the court is unaware of any caselaw that would mandate that the court to exclude an Exhibit because it is unsigned when a signature is contained within the body of the motion. If that were the case, the court would be forced to exclude some of Plaintiffs' exhibits. Accordingly, the court overrules Plaintiffs' Rule 11 and Rule 603 objections.

Third, the court does not construe the Exhibits as demonstrative exhibits, nor do Defendants offer the Exhibits as such. The Exhibits are simply a digestible version of the objections Defendants raised in the body of their Memorandum in Opposition to Plaintiffs' Motion for Fees. Accordingly, the court overrules this objection.

Fourth, the court agrees the documents speak for themselves. As noted above, however, the court does not construe Defendants' Exhibits as altering, adding to, or amending Plaintiffs' billing records. Again, the Exhibits simply note which objections pertain to which entry on the billing record. Thus, the court overrules this objection.

## C.  Motion for Attorney Fees

Determining fees and costs at the conclusion of litigation is a three-step process. *Knight v. Snap-on Tools Corp.*, 3 F.3d 1398, 1403–06 (10th Cir. 1993). First, the court determines which party is entitled to costs and fees under the applicable statutes and rules. *Id.* at 1403–04. Second, the court must determine the scope of fees available under the acceptance of a Rule 68 Offer. *Id.* at 1404–05. Lastly, the court must determine whether the fees and costs sought are reasonable. Since the court already decided the second issue, this Order will (1) set forth the applicable statutes and rules and then (2) determine the reasonableness of the fees and costs that Plaintiffs request.

1. Applicable Statutes and Rules

Plaintiffs move for an award of attorney fees in the amount of $207,957.50 and costs in the amount of $20,302.34. The parties do not dispute that Plaintiffs are the prevailing party and that they are entitled to fees. The only disagreement in this regard is to what extent Plaintiffs prevailed, which relates to the reasonableness of the fees. Thus, the court need not address the applicable standards for collecting fees and costs under 42 U.S.C. § 1988. The dispute over the degree to which Plaintiffs prevailed will be addressed with the reasonableness of the fees below. The parties do dispute, however, whether under DUCivR 54-2 Plaintiffs are entitled to recover taxable costs.

DUCivR 54-2(a) states that "[w]ithin fourteen (14) days after the entry of final judgment, the party entitled to recover costs *must* file a bill of costs on a form available from the clerk of court, a memorandum of costs, and a verification of bill of costs under 28 U.S.C. § 1942. . . Failure to itemize and verify costs *may* result in their being disallowed." (emphasis added). The time limitation "language of DUCivR 54-2(a) is mandatory, not permissive." *Callaway v. Skywest Airlines, Inc.*, No. 2:04-CV-179 TS, 2006 WL 8459323, at *1 (D. Utah June 14, 2006).

Neither party referenced (nor could the court find) any caselaw addressing whether the mandatory language also applies to the form available from the clerk.

Defendants argue that Plaintiffs are not entitled to any taxable costs because Plaintiffs untimely field for costs, did not use the proper form, and did not include the necessary documents. Plaintiffs acknowledge they did not submit the court-approved form referenced in DUCivR 54-2 and failed to include receipts. However, Plaintiffs argue that despite these issues, the court may still award these costs because Plaintiffs substantially complied with the rule by submitting references to dates, check numbers, and gave the relevant information to opposing counsel before filing their Motion for Fees. The court agrees with Plaintiffs.

First, the court disagrees with Defendants that Plaintiffs did not timely file for costs. While the rule does not so state, the court may grant extensions to file for costs under DUCivR 54-2. *See Callaway,* No. 2:04-CV-179 TS, 2006 WL 8459323, at *2 (admonishing plaintiffs for failing to request an extension to file for costs before the deadline). Therefore, because Plaintiffs timely received extensions and complied with the deadlines in those orders, the court finds Plaintiffs timely filed their costs—albeit on the wrong form and without verification. Regarding the form, the court feels it has discretion in this matter and that it would be improper to deny Plaintiffs the ability to recover their taxable costs. Plaintiffs substantially complied with the rule and remedied any deficiencies once Defendants pointed out Plaintiffs' error. The court notes that in the amount of costs in Plaintiffs' Amended Bill of Costs matches the amount listed in Plaintiffs' Motion for Fees. Additionally, Defendants were able to tell which costs were properly taxable and were able to argue whether Plaintiffs are entitled to those costs. Thus, Defendants only complaint is that Plaintiffs used an incorrect form—literally exalting form over substance.

Accordingly, the court will allow Plaintiffs to recover their taxable costs, subject to the limitations explained below. *See infra* Part 2(C)(iv).

### 2.   Reasonableness of Costs and Fees

To determine a reasonable fee, the court must first calculate the "lodestar," which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir. 994). After determining the reasonable hourly rates, the court must determine whether counsel has exercised billing judgment with respect to the claimed number of hours worked. *See Ellis v. University of Kan. Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998). Counsel must make a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude hours from his fee submission." *Hensley v. Eckerhart,* 461 U.S.424, 434 (1983).

Defendants make numerous categories of objections to Plaintiffs' cost and fee requests. Specifically, Defendants argue: (i) Mr. Rammell's hourly rate is excessive; (ii) Defendants are not responsible for costs and fees associated with claims directed at other defendants; (iii) many of the time entries are vague, clerical, or otherwise not fairly billed to a client; (iv) the fees are excessive and duplicative; and (v)  the overall bill should be reduced because of block billing. Once the court has addressed these concerns, it will (vi) summarize the deductions and then (vii) determine whether the fees are reasonable considering the Plaintiffs' degree of success.

### i.      Reasonable Hourly Rate

To satisfy the burden of showing that the claimed rate is reasonable, a fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). When a lawyer seeking fees is not from the area, "the fee rates of the local area should be applied." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983), *disapproved of by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987) (disagreeing with the *Ramos* opinion regarding when the risk of nonpayment should be determined). The most useful tool in determining the reasonable rate is from "local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson v. Equifax Information Services, LLC,* 560 F.3d 235 (4th Cir. 2009).

Defendants complain about only Mr. Rammell's hourly rate.[5] Attached to Plaintiffs' Motion for Fees are four affidavits from Salt Lake City attorneys, attesting to the reasonableness of Mr. Rammell's hourly rate. The affidavits also reference the relevant criteria in determining reasonable hourly rates (*e.g.*, experience, reputation, skill, and the nature and complexity of the case). Defendants argue that the affidavits are unhelpful because Salt Lake City is not the relevant legal community. Defendants also note that Mr. Rammell's contract with Plaintiffs lists an hourly rate of $395 for Pocatello, Idaho, which Defendants argue is evidence that Mr. Rammell's $450 rate is unreasonable. Notably, Defendants did not offer any affidavits to contest the hourly rate. Neither party cited any caselaw that would help the court determine whether Salt Lake City or Northern Utah is the correct legal market.

The court is nonetheless persuaded by Defendants' arguments that it is Plaintiffs' burden to establish that Salt Lake City, not Northern Utah, is the relevant legal community. Thus, the

---

[5] Since Defendants do not challenge the rates of the other attorneys or paralegals, and those rates do not strike the court as unreasonable, those rates will not be reduced.

affidavits supporting Mr. Rammell's hourly rate of $450 are unhelpful because these affidavits attest to a reasonable rate in Salt Lake City for this type of litigation, not Northern Utah. Since neither party submitted affidavits or other evidence about rates in Northern Utah, the court finds Daniel Steele's rate of $375 to be indicative of the rates in the legal communities surrounding Salt Lake City. Mr. Steele's affidavit states that his rate is "consistent with other similarly qualified attorneys in [Provo, Utah] and given the years we have each been in practice." Accordingly, the court finds that a more reasonable hourly rate for Mr. Rammell is $375.

### ii. *Fee Attributable to Other Defendants*

The bulk of the dispute over fees revolves around which fees Defendants are responsible for paying when the billing description does not state to which defendant the legal work was directed. The Tenth Circuit does not allow a plaintiff to receive fees for "time spent on distinctly different claims for relief that are based on different facts and legal theories." *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1254 (10th Cir. 1992). To determine what is distinctly different, courts should "focus on whether the claims seek relief for essentially the same course of conduct." *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir. 1983). Under this formula, a party cannot recover fees when the course of conduct was "entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." *Id.*

Here, Plaintiffs allege constitutional violations for unlawful arrest, unlawful search and seizure, excessive force, and racial profiling against all defendants. Specifically, Plaintiffs allege that the Box Elder Defendants relied upon the Oneida Defendants' unconstitutional, unreasonable suspicion that Plaintiffs had been involved in a robbery in Idaho. In relying on that alleged unconstitutional information, the Box Elder Defendants allegedly engaged in unlawful arrests, searches and seizures, racial discrimination, and used excessive force while holding

Plaintiffs in custody. The only claim not asserted against the Box Elder Defendants was a due process violation for racial profiling that Plaintiffs asserted against only the Oneida Defendants.

Given the nature of the case as alleged and pursued by Plaintiffs, it is difficult to untangle the factual basis and legal theories needed to support the causes of action asserted against the Box Elder Defendants. In other words, Plaintiffs needed to investigate the unreasonableness of the Oneida Defendants' suspicion because that information was critical to proving the constitutional rights violations allegedly committed by the Box Elder and UHP Defendants. Accordingly, the court will only eliminate or discount the hours that are not reasonably related to either Plaintiffs' investigation of the Oneida Defendants' unreasonable suspicion or the Box Elder Defendants' conduct.[6] Fees and costs related to the UHP Defendants or settlement discussions with the UHP or Oneida Defendants will be reduced or removed.

The court recognizes that Plaintiffs removed a few billing entries where the facts or legal theories did not involve Defendants. There are additional entries that the court feels Plaintiffs overlooked when removing fees unrelated to the Box Elder Defendants or where Plaintiffs' counsel was not sufficiently clear so that the court may determine whether the fees are not properly related to the facts or theories needed to pursue the claims against Defendants. The following time entries will be reduced or eliminated on those bases:

- 07/18/2019: Mr. Rammell billed 1.8 hours for a discussion about what happens if Plaintiffs are unsuccessful in serving the UHP Defendants. This entry is not related to the Box Elder Defendants and will be removed.

---

[6] The court disagrees with Plaintiffs that Defendants agreed to pay "**all** of Plaintiffs' reasonable attorney fees without distinction between where those fees came from in regards to other Defendants." This is an unreasonable interpretation of the Offer and Judgment, runs contrary to the standard set forth in *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248 (10th Cir. 1992), and would result in impermissible double recovery of fees and costs.

- 12/09/2020: Mr. Rammell billed 0.5 hours on for "work on UHP settlement." This entry was not removed and is similar to those deducted on Plaintiffs' own accord.

- 12/06/2019: Mr. Rammell billed 1.0 for "[w]ork on settlement options re: UHP defendants. . ." Again, this entry is similar to those deduced on Plaintiffs' own accord.

- 12/05/2019: Mr. Rammell billed 1.10 hours for "[w]ork on UHP depositions and settlement offers with Darin." This entry will be eliminated since it pertains to the settlement with only the UHP Defendants.

- 6/20/2019: Mr. Rammell billed 8.30 for "[w]ork on response to motion to dismiss extensively and finish." Plaintiffs filed their response to Box Elders Defendants' motion to dismiss on 06/19/2019. Thus, this time entry relates to other defendants and it is unclear which defendant that may be. Accordingly, this entry will be removed.

- 08/28/2019 Mr. Heart billed 0.60 for "reviewing discovery requests to UHP." This time is not related to Box Elder and does not pertain to the Oneida Defendants' alleged unreasonable suspicion. Accordingly, this entry will be deducted.

### iii.   *Vague, Clerical, or Not Fairly Billed to Client*

Defendants allege that over 110 of Plaintiffs' roughly 350 time entries are unreasonably vague. Defendants place too high of a standard on Plaintiffs' billing descriptions. Indeed, it is the "Plaintiffs' burden in an application for attorney's fees is to prove and establish the reasonableness of each dollar." *Flitton v. Primary Residential Mortg., Inc.*, 614 F.3d 1173, 1178 (10th Cir. 2010). However, a plaintiff "is not required to record in great detail how each minute of his time was expended." *Id.* (citation omitted). Counsel should at least "identify the general subject matter of his time expenditures" so that the court can evaluate "the propriety of the fee

15

request based on the specific billing entries." *Id.* (citation omitted). When the court is unable to make such a determination, it may reduce the fees according to its discretion. *Id.*

Here, Plaintiffs have appropriately removed some entries that were "insufficiently descriptive" to be fairly billed. For example, Plaintiffs removed an entry on 05/03/2017 where Andrew Heart billed 0.30 hours for "Review Documents." The court agrees such descriptions are too vague and will remove similar entries for vagueness. Additionally, some of Plaintiffs' bills are for non-legal or clerical work. Those types of billing entries are typically not billed to the client and are considered overhead costs for a firm.

Thus, the following entries are those the court finds are unreasonable because the entry is too vague, covers non-legal work, or is otherwise improperly billed to the client:

- 08/02/2019: Mr. Heart billed 0.80 hours for "[l]etter to [c]lient. Letter to opposing Attorneys." This entry is deducted for vagueness.

- 11/30/2018: Mr. Heart billed 0.1 hours for "draft documents." This entry is deducted for vagueness.

- 12/06/2018: Mr. Heart billed 0.1 hours for "review documents." This entry is deducted for vagueness.

- 08/02/2019: Mr. Heart billed 0.8 hours for "letter to client. Letter to opposing attorneys." This entry is deducted for vagueness.

- 09/09/2019: Mr. Heart billed 0.20 for a "[l]etter to Opposing Attorney." This entry is deducted for vagueness.

- 09/12/2019: Mr. Heart billed 0.5 for a "telephone call to client." This entry is deducted for vagueness.

- 09/13/2019: Mr. Heart billed 1.0 for "calls with client." This entry is deducted for vagueness.

- 09/16/2019: Mr. Heart billed 1.0 hours for "calls with clients." This entry is deducted for vagueness.

- 09/24/2019 through 10/07/2019: Mr. Heart billed a total of 3.5 hours for a variation of the description "telephone call[s] to client" or "email to client." Two of those entries include partially sufficient descriptions, so the court will reduce these entries by 3 hours, leaving 0.5 hours of reasonably billed time.

- 11/07/2019: Mr. Heart billed 1.20 hours for "[r]eview[ing] deposition scheduling and logistics." This entry is deducted for vagueness and because it consists of non-legal work.

- 09/18/2019: Mr. Heart billed 0.50 hours for "[d]raft[ing] [a] letter to opposing counsel." This entry is deducted for vagueness.

- 12/23/2019: Mr. Heart billed 4.0 hours for "[d]raft[ing] [d]ocuments. Draft reply to Oneida County objection." This entry is deducted for vagueness and because it is directed specifically to Oneida County and it is unclear whether the objection is related to the theories needed to prevail against Defendants.

- 05/21/2019: Mr. Rammell billed 0.30 for "Telephone Call from media and follow up; follow up re: status and discovery and plan for depositions, review litigation plan/order." This entry for correspondence with media is not reasonable to bill to a client and will be deducted.

- 01/12/2018: Mr. Rammell billed 2.3 Hours for "[t]ravel to site." The court does not believe observing the site of the arrest would aid in the litigation.

- 04/14/2017: Mr. Rammell billed 2.5 hours for the initial conference with his clients. Initial conferences are not typically billed to clients and therefore this entry is eliminated.

- 04/14/2017: Mr. Rammell billed 1.1 hours for researching potential claims. Charging "an adversary with time spent conducting basic background research is presumptively unreasonable." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1253 (10th Cir.1998).

- 12/2/208: Mr. Rammell billed 0.7 hours for a phone call do discuss media issues. Media-related matters are not fairly billed to a client.

- 08/15/2017: Mr. Rammell billed 0.3 hours for a telephone call from his client and returned call to client. This entry is deducted for vagueness.

- 04/16/2019: Mr. Rammell billed 3.0 hours for various things including "work on getting media in format that can review and take home." This type of work is non-legal. Therefore, the court will reduce this entry by one hour.

- 05/21/2019: Mr. Rammell billed 0.3 hours for a phone call from the media and follow up. Again, media-related matters are not reasonably billed to a client.

- 12/21/2018: Mr. Steele billed 0.50 for a "Call with Mr. Rammell and discuss media inquiries. Review summons and filings related thereto." Media-related matters are not fairly billed to the client.

- 10/09/2019: Mr. Steele billed 0.40 for "Telephone call with Mr. Rammell re: status." This entry is deducted for vagueness.

- 04/15/2019: Mr. Brown billed 0.40 hours for "Work on video files with Bron." *See Allen v. United States Steel Corp.*, 665 F.3d 689, 697 (5th Cir. 1982) (noting that fees are only recoverable only "to the extent the [lawyer] performs work traditionally done by an attorney").

- 05/30/2017: Mr. Brown billed 0.6 hours for "Unzip files for case and print." *Id.*

- 12/26/2019: Mr. Brown billed 0.2 hours for "Help Kaylee file responses on the case." *Id.*

- 04/16/19: Mr. Brown billed 0.10 hours for "Move other AV viewer file to google drive for use." *Id.*

Lastly, Defendants argue some of the costs associated with Plaintiffs' counsel's travel are not fairly billed to the client. We agree with Defendants' specific objections and note a few additional unreasonable costs. The court, therefore, denies the following costs: movies ($28.90, $15.56), car wash ($10.00), items at Target ($4.46), RubySnap cookies ($23.68, $40.58), and auto parts ($3.21). These items total $136.39, which will be subtracted from Plaintiffs' request for costs.

iv.  *Excessive or Duplicative*

Defendants complain frequently that Plaintiffs' hours were excessive or duplicative. Most of these complaints deal with the time spent preparing for and traveling to and from depositions. Defendants argue that the travel time to and from depositions is duplicative since two attorneys attended and that the travel time should be billed at a reduced rate. The court agrees with Defendants to some degree.

The Tenth Circuit has recognized that travel time may be awarded in a request for fees but that a "court has discretion to apply a reduced hourly rate if the time is otherwise unproductive." *K.S. by Barry S. v. Mesa Cty. Valley Sch. Dist. 51*, No. 1:18-CV-2238-SKC, 2020 WL 996868, at *8 (D. Colo. Mar. 2, 2020) (citing *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1106 (10th Cir. 2010)). From the court's review of the caselaw, it seems that district courts frequently reduce travel time when those hours are unproductive. *Id.*; *see also Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990); *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1106 (10th Cir. 2010). Accordingly, the court will eliminate a few time entries where Plaintiffs' travel entries included both Mr.Rammell and Mr. Heart and

19

where having both attorneys bill and attend those depositions was unproductive. Additionally, the court finds that in a case where the complaint only requests a minimum of $10,000 (and settles for slightly more than that) it is unreasonable to travel with two attorneys—especially where one attorney only minimally participates in the deposition.

Thus, the court will not deduct costs or time for Mr. Rammell when he traveled for this case, except for of the two trips he took to the scene of the alleged wrongful arrest. As Defendants point out, the trip is less than a two-hour drive from Mr. Rammell's office and Mr. Rammell is requesting $259.25 for those two trips. These costs include reimbursement for hotels, gas, and food on top of his hourly rate. The court does not feel these costs were necessary under the circumstances and, therefore, the court will deny Plaintiffs' request for the costs associated with these two trips and allow the hours. Furthermore, the court will deny Mr. Heart's hours when he billed time for attending and traveling to depositions with Mr. Rammell. Specifically, the court removes the entries from 11/20/2019 (14.30 hours) and 12/17/2019 (10.5 hours). These entries total 24.8 hours. The court does not find that any other entries are otherwise excessive or duplicative. However, the court finds that Plaintiffs' seeking to recover the costs and fees for *all* defendants from only the Box Elder Defendants would result in improper double recovery. *See Bravo v. City of Santa Maria*, 810 F.3d 659, 668 (9th Cir. 2016) (noting that courts should account for fees and costs already paid by other defendants to avoid unreasonable double recovery).

Plaintiffs received $15,000 from the Oneida Defendants and $21,000 from the UHP Defendants. These settlement amounts included costs and fees. Thus, Plaintiffs have already recovered fees and costs attributable to the UHP and Oneida Defendants and cannot properly seek to recover those costs and fees again. The difficulty is that those settlements do not indicate

20

what amount of the $36,000 is meant to cover costs and fees. Accordingly, the court in its discretion—and based on all of the settlement agreements—will consider that $15,000 of the Oneida and UHP settlement agreements were intended to cover fees, costs, and interest. Thus, Plaintiffs' request for costs will be reduced by $5,000 (since costs are typically much less than the fees) and the fees shall be reduced by $10,000.

*v.*   *Block Billing*

"The term block billing refers to the time-keeping method by which [a lawyer] enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Robinson v. City of Edmond*, 160 F.3d 1275, 1285, n.9 (10th Cir. 1998). Block billing is particularly concerning "in a situation where a party is seeking to have his opponent pay for his own lawyer's work." *Id.* at 1284. "Nevertheless, [the Tenth Circuit] ha[s] never mandated a reduction or a denial of a fee request based on block billing." *BP Pipelines (N. Am.) Inc. v. C.D. Brown Const., Inc.*, 473 F. App'x 818, 835 (10th Cir. 2012) (citation omitted). "The decision whether block billing indicates an unreasonable claim should remain with the district court who should be allowed to exercise its discretion accordingly." *Id.* (citation omitted).

Defendants complain that "Plaintiffs' time entries are rife with block billing" and request that "the Court disregard individual entries that are block billed or apply an across the board reduction for counsels' practice of block billing." Plaintiffs contend that "[a] billing statement that itemized the 'tasks' performed and provides a specific summary of that task is not considered block billing."

Here, the court is not so concerned about the alleged block billing. Plaintiffs' counsel could (and should) break down the time spent on individual tasks performed in one day—which they seemingly did most of the time. When reviewing the Plaintiffs' billing entries, the court was

21

certainly able to determine what tasks were performed and evaluate each task's necessity. Additionally, where one entry included multiple tasks, the court was able to determine that the total time billed for those tasks was reasonable. Accordingly, the court will not reduce any entries for block billing.

*vi.    Summary of Deductions*

Based on the foregoing, the court summarizes the deductions as follows:

- Plaintiffs' request for costs is reduced by the following: $395.64 for excessive, unreasonable, or duplicative costs; and $4,500 for post-Acceptance costs. These reductions total $4,895.64.

- Since Plaintiffs recovered some costs and fees from the UHP and Oneida Defendants, they cannot again recover those costs from the Box Elder Defendants. To do so would run contrary to principles prohibiting double recovery. The court, in its discretion, reduced the costs by $5,000 and the fees by $10,000.

- Mr. Rammell's hours are reduced by 20.1 hours. Mr. Rammell's new total billed hours are 310. At the court-determined reasonable rate of $375 that is $116,250 (reduction of $24,042.50). Additionally, Mr. Rammell's $4,165 spent in preparing the request for fees is eliminated.

- Mr. Steele's hours are reduced by 1.7 hours. Mr. Steele's new total billed hours is 11.3. At his rate of $375 that totals $4,237.5 (reduction of $846.50).

- Mr. Heart's hours are reduced by 63.4 hours. The court notes that Plaintiffs' counsel stated that Mr. Heart's hours were reduced by 5%. The court does not believe that reduction was ever made. In Paragraph 18 of Mr. Rammell's Affidavit attached to Plaintiffs' Motion for Fees, the table notes Mr. Heart had 345 total billing hours before Plaintiffs' counsel exercised billing

22

judgment. Paragraph 22 notes Mr. Heart's hours were reduced by 27.1, bringing his hours to

317.9, which is the total reflected in Paragraph 24 right after Paragraph 23 states Mr. Heart's

hours will be reduced by an additional 5%. Accordingly, the court will reduce Mr. Heart's new

total hours by 5%. According to the court's deductions, Mr. Heart's total hours is 254.5 (317.9

hours minus 63.4 hours). Reducing that total by an additional 5% is 241.8 hours. At Mr. Heart's

rate of $175 per hour that is $42,310.63 (reduction of $13,321.88).

- Mr. Brown's hours are reduced by 1.3 hours. Mr. Brown's new total billed hours is 0.8.

At his rate of $200 that totals $156 (reduction of $253.5).

All of these deductions total of $72,353.38. Thus, Plaintiffs reasonably billed hours and

costs total $150,242.47. This amount is subject to a downward adjustment as explained below.

*vii.     Reasonableness of Fee in Relation to Plaintiffs' Success*

"[I]n order to qualify for attorney's fees under § 1988, a plaintiff must be a 'prevailing

party.'" *Farrar v. Hobby*, 506 U.S. 103, 109 (1992).

> [T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some
> relief on the merits of his claim. The plaintiff must obtain an enforceable judgment
> against the defendant from whom fees are sought or comparable relief through a
> consent decree or settlement. Whatever relief the plaintiff secures must directly
> benefit him at the time of the judgment or settlement.

*Id.* at 111 (internal citations omitted). In short, to be considered a "prevailing party" typically

only requires an award of only nominal damages. *See id.*

Once a party is considered to be a prevailing party, "the degree of the plaintiff's overall

success goes to the reasonableness" of the fee. *Texas State Teachers Ass'n v. Garland Indep. Sch.

Dist.*, 489 U.S. 782, 793 (1989). The degree of success obtained is considered as the "most

critical factor" in determining reasonableness. *Hensley*, 461 U.S. at 436. Where "a plaintiff has

achieved only partial or limited success, the product of hours reasonably expended on the

litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* Indeed, "[w]here recovery of private damages is the purpose of. . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Riverside v. Rivera*, 477 U.S. 561, 585 (1986) (Powell, J., concurring). Thus, when a court has "considered the amount and nature of damages awarded" it may "award low fees or no fees without reciting the 12 factor bearing on reasonableness. . . or multiplying the number of hours reasonably expended by a reasonable hourly rate." *Farrar*, 506 U.S. at 115.

There is no dispute that Plaintiffs are the prevailing party. Defendants contend, however, that Plaintiffs are only technically the prevailing party because they did not receive a declaration or acknowledgment of any alleged civil rights violations and because the Box Elder Defendants have not changed any of their policies or procedures. Plaintiffs do not respond to these arguments in their Memorandum in Support of Plaintiffs' Motion for Fees. The court is somewhat persuaded by Defendants' arguments.

Plaintiff Fox settled with the Oneida County Defendants for $5,000. In this settlement agreement, Oneida County expressly denied any liability or wrongdoing and entered into the agreement "merely to avoid litigation and buy their peace." Similarly, Plaintiff McFarlin settled with Oneida County Defendants for $10,000 and that settlement agreement contained the same denial of wrongdoing and liability. Both Plaintiffs then entered into a joint settlement agreement with the UHP Defendants. In that agreement, Plaintiffs received $21,000 and agreed that the settlement "shall not be constructed as an admission of liability or wrongdoing of any kind." These three settlement agreements included costs, fees, and interest. Ultimately, Plaintiffs settled with the Box Elder Defendants on January 23, 2020, when they accepted the Offers. The Offers

state that each Plaintiff will receive $5,100, "plus reasonable attorney fees, costs, and interest now accrued." In addition, the Offer expressly states that it "is not an admission of liability by any current or potential Box Elder County Defendant[] and any liability is expressly denied."

Thus, Plaintiffs received a total of $46,200, which includes the costs and fees for two of the three defendants. Plaintiffs have not received an admission of guilt, acknowledgment of constitutional rights violations, nor can the court find any change in any of the defendants' policies or procedures. Despite not receiving acknowledgment of wrongdoing, the court cannot say that, in terms of the dollar amount recovered, the Plaintiffs did not substantially succeed on their claims. The court is nevertheless troubled by the contrast between these settlement amounts and the portion of the overall fees and costs Plaintiffs believe the Box Elder Defendants owe.

Defendants argue that Plaintiffs are requesting that Defendants pay 43 times the amount of the settlement in fees. The court disagrees that the $10,200 paid by the Box Elder Defendants are the only amounts the court should consider. *See Bravo v. City of Santa Maria*, 810 F.3d 659, 667 (9th Cir. 2016) (finding it proper to consider other settlements in determining a party's degree of success). Plaintiffs were indeed able to receive $46,200 from all of the defendants. Even factoring in all of the settlements and after the court has reduced Plaintiffs' fee requests, Plaintiffs are requesting that *one defendant* pay more than three times the amount of money in fees than it received from all *three defendants* in settlements. This request is unreasonable in light of the fact that Plaintiffs received only monetary awards, did not receive a single acknowledgment of constitutional rights violations, and the litigation did not result in any apparent changes to any of the defendants' policies or procedures. The court therefore finds it reasonable to deduct an additional 10% from the fee of $150,242.47 as calculated above. This deduction is necessary to ensure that the fee is reasonable in relation to the level of Plaintiffs'

25

success in vindicating the alleged civil rights violations. Thus, Plaintiffs are entitled to recover $135,218.22 in costs and fees.

## **CONCLUSION**

Based on the above reasoning: Defendants' Motion for Relief from Judgment is DENIED; Plaintiffs' Motion to Strike is DENIED; and Plaintiffs' Motion for Fees is GRANTED. The court awards Plaintiffs $135,218.22 in attorney fees and costs.

DATED this 10th day of September, 2020.

BY THE COURT:

DALE A. KIMBALL
United States District Judge